IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 16, 2001 Session

## JONATHAN DAVID WILSON v. SANDRA KAY WILSON

**Appeal from the General Sessions Court for Loudon County**
**No. 6879 William H. Russell, Judge**

**FILED JUNE 22, 2001**

**No. E2000-01374-COA-R3-CV**

This appeal from the Loudon County General Sessions Court questions whether the Trial Court erred in awarding a change of residential custody from Appellant, Sandra Kay Wilson to Appellee, Jonathan David Wilson. Ms. Wilson appeals the decision of the General Sessions Court. We affirm the decision of the Trial Court and remand for such further proceedings, if any, consistent with this opinion. We adjudge costs of the appeal against the Appellant, Ms. Sandra Kay Wilson and her surety.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

H. Allen Bray, Maryville, Tennessee, for the Appellant, Sandra Kay Wilson.

Martha Meares and Anne M. Stair, Maryville, Tennessee, for the Appellee, Jonathan David Wilson.

### OPINION

This appeal arises from a change of custody action between Sandra Kay Wilson,[1] the Appellant and Jonathan David Wilson, the Appellee. Ms. Wilson appeals the judgment of the Loudon County General Sessions Court and presents for our review one issue which we restate: whether the evidence preponderates against the Trial Court's finding of a material change of circumstance such that there existed a risk of substantial harm to the minor children sufficient to necessitate a change in residential custody.

---

[1] Immediately following the filing of the change of custody petition, Ms. Wilson remarried and changed her last name to Clark. In this opinion we will refer to her as Ms. Wilson as that is the name on the original petition.

We affirm the judgment of the Trial Court and remand for further proceedings, if any, consistent with this opinion.

The parties were married in Blount County on July 14, 1989. There were two children born of this marriage, Jonathan Michael Wilson[2] and Cassidy Renee Wilson.[3] Mr. Wilson filed a divorce complaint in Blount County General Sessions Court on November 15, 1996 and a final decree was entered on February 3, 1997 by default judgment granting a divorce to Mr. Wilson. The final decree awarded the parties joint legal custody of the minor children with Ms. Wilson receiving residential custody. Mr. Wilson was awarded visitation with his children every other weekend and every other Wednesday. Additionally, Mr. Wilson was awarded visitation with his son every remaining Wednesday that he did not currently have both children. Finally, he was awarded standard holiday visitation.

On January 22, 1999, Mr. Wilson filed a petition for sole custody of the parties' minor children or in the alternative residential custody. Mr. Wilson averred that a substantial and material change in circumstance warranted a change in the custody agreement as set forth in the parties' final decree. Mr. Wilson made numerous allegations in his petition to support a change of custody which we will summarize: Ms. Wilson's boyfriend[4] was staying overnight and eventually began residing with Ms. Wilson,[5] Ms. Wilson's boyfriend had disciplined the minor children using corporal punishment after Mr. Wilson requested that he not discipline the children in this manner, Ms. Wilson had repeatedly neglected the dental, medical and hygiene needs of the minor children, and Ms. Wilson and her boyfriend had allowed Jonathan[6] to jump off a ledge that is twenty-five (25) feet high into Little River[7] in the Smoky Mountains.

A restraining order was signed by the Trial Court on January 22, 1999 restraining Ms. Wilson from the following:

---

[2] D.O.B. August 15, 1991

[3] D.O.B. May 2, 1994

[4] Tim Clark

[5] According to the record, Mr. Clark and Ms. Wilson were married immediately following the restraining order which resulted from the petition filed by Mr. Wilson for sole custody or in the alternative residential custody. The petition was filed January 22, 1999, and the restraining order was dated the same day. Mr. Clark and Ms. Wilson were married January 25, 1999 in a civil service and a religious service was performed shortly thereafter.

[6] The minor son and the Appellee are both named Jonathan in this proceeding. We will refer to the minor son as Jonathan and to the Appellee as Mr. Wilson so as to avoid any confusion.

[7] This area in the Smoky Mountains is commonly referred to as the "Sinks" and is a popular place for people to swim during the summer months. Additionally, it is a popular place for people to jump from a ledge twenty-five (25) feet high into Little River. There were testimony and exhibits at trial regarding warning signs posted at this area, however, the exhibits were not included in the record.

coming about the Plaintiff or his residence located at 1044 Panorama Drive, Maryville, Tennessee 37801, from molesting, harassing, or interfering with the Plaintiff or his temporary custody of the parties' minor children at any time and at any place, pending the final hearing of this cause.

The Court further granted Mr. Wilson temporary custody of the two minor children pending the final hearing.

A multitude of motions were filed and several hearings took place before the final hearing on October 19, 1999. Following the hearing, the Trial Court took the matter under advisement. A decision was issued November 29, 1999 changing residential custody from Ms. Wilson to Mr. Wilson. Ms. Wilson filed a Request for Findings of Fact and Conclusions of Law on December 10, 1999. An Order was signed and entered on January 19, 2000 reflecting the decision made by the Court on November 29, 1999. The Court invited the parties to submit Proposed Findings of Fact and Conclusions of Law; the Judge signed those submitted by counsel for Mr. Wilson. Based on the Findings of Fact and Conclusions of Law, the Trial Court found in pertinent part:

the Court finds that the continuation of the previously adopted custody award will substantially harm and damage the parties' minor children, inasmuch as the following activities, behaviors, and actions on the part of the Defendant and those residing in her household, clearly cause danger or harm to the mental and/or emotional well-being of the minor children:

The Court outlined in detail those "activities, behaviors, and actions on the part of the Defendant and those residing in her household" that caused danger and harm to the minor children, which will be discussed in the following pages.

The trial court must be able to exercise broad discretion in determining matters of custody and visitation. *Gaskill v. Gaskill*, 936 S.W.2d 626 (Tenn. Ct. App. 1996). Such decisions are factually driven and involve the careful consideration of multiple factors. *Adelsperger v. Adelsperger*, 970 S.W.2d 482 (Tenn. Ct. App. 1997). The best interest of the child has always been the paramount consideration. *Luke v. Luke*, 651 S.W.2d 219 (Tenn. 1983). We review the Trial Court's findings of fact *de novo* upon the record of the proceedings below, with a presumption of correctness "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *see also Hass v. Knighton*, 676 S.W.2d 554 (Tenn. 1984). There is no presumption of correctness with regard to the trial court's conclusion of law, and those conclusions are reviewed *de novo*. *Jahn v. Jahn*, 932 S.W.2d 939 (Tenn. Ct. App. 1996). A trial court, "on an issue which hinges on witness credibility, will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary." *Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W. 2d 488 (Tenn. Ct. App. 1974).

On this appeal, we must determine if the Trial Court abused its discretion in changing residential custody from Ms. Wilson to Mr. Wilson. The abuse of discretion standard was addressed in the case of *BIF, a Div. Of Gen. Signals Controls, Inc., v. Service Constr. Co., Inc.*, an unreported opinion of this Court, filed in Nashville on July 13, 1988:

> Appellate courts' deference to trial courts' "discretionary" decisions should not promote result-oriented opinions or seemingly irreconcilable precedents. The law's need for consistency, predictability, and reliability requires the elimination of apparently whimsical authority on both the trial and appellate levels. In order to ensure a rational standard of review, a trial court's discretionary decisions should be reviewed to determine: (1)whether the factual basis of the decision is supported by sufficient evidence; (2) whether the trial court has correctly identified and properly applied the applicable legal principles; and (3) whether the trial court's decision is within the range of acceptable alternatives.

(Citation Omitted).

An initial award of custody is "subject to such changes or modification as the exigencies of the case may require." T.C.A. 36-6-101(a)(1) (Supp. 2000). A judgment or order awarding custody is *res judicata* as to the facts in existence at the time of the award. *Long v. Long*, 488 S.W.2d 729 (Tenn. Ct. App. 1972). This Court addressed this issue in *Wall v. Wall*, 907 S.W.2d 829, 834 (Tenn. Ct. App. 1995):

> When two people join in conceiving a child, they select that child's natural parents. When they decide to separate and divorce, they give up the privilege of jointly rearing the child, and the divorce court must decide which parent will have primary responsibility for rearing the child. This decision of the Court is not changeable except for "change of circumstances" which is defined as that which requires a change to prevent substantial harm to the child. Custody is not changed for the welfare or pleasure of either parent or to punish either parent, but to preserve the welfare of the child. Custody is not changed because one parent is able to furnish a more commodious or pleasant environment than the other, but where continuation of the adjudicated custody will substantially harm the child. *Contreras v. Ward*, Tenn.App.1991, 831 S.W.2d 288.

The burden to prove a material change in circumstances lies upon the party seeking a modification of the prior decree. *Hoalcraft v. Smithson*, 19 S.W. 3d 822 (Tenn. Ct. App. 1999). The burden remains on the moving party to show that he is comparatively more fit than the party with custody

and to show that it would be in the best interest of the child for the moving party to be the custodial parent. *Hoalcraft v. Smithson*, 19 S.W.3d 822 (Tenn. Ct. App. 1999).

Ms. Wilson argues on appeal that Mr. Wilson did not meet his burden of proving that there existed a "change in circumstance" which required a change in physical custody to prevent substantial harm to the minor children. She further argues that the preponderance of the evidence at trial showed that the best interest of these children is for them to remain with her. Ms. Wilson addresses each allegation brought in the petition and begins by admitting that while she and Mr. Clark did cohabit in the home Mr. Clark purchased, they sought professional counseling for themselves and the minor children to ease the stress of uniting their new family. Additionally, Ms. Wilson argues that any discipline administered by Mr. Clark to her minor children was not proven to be excessive or inappropriate and that a step-parent needs to be able to discipline his step-children.

As for the incident where Mr. Clark spanked Cassidy after she had a bathroom accident, Ms. Wilson argues that Mr. Clark was disciplining her for not being truthful, not because she had an accident. Ms. Wilson further admits that she and Mr. Clark allowed Jonathan to jump from the ledge at the "Sinks" but argues that they probably would not allow it again.

Finally, and most importantly, Ms. Wilson argues that as for the allegations of neglect of medical and dental care, and neglect of proper hygiene, neither Mr. Wilson nor Ms. Wilson is to blame. Ms. Wilson argues that she provided appropriate medical attention for the medical problems of Cassidy and Jonathan and that those problems continued after Mr. Wilson received custody and that the medical problems experienced by Cassidy are common in children. Ms. Wilson argues that there was no proof that these children were exposed to any risk of substantial harm and that the Trial Court abused its discretion in holding otherwise.

Mr. Wilson argues that Ms. Wilson repeatedly neglected the hygiene needs of the minor children including the vaginal hygiene of Cassidy, resulting in painful physical problems. Additionally, both children suffered from a "hoof and mouth" viral infection which caused a "blistery" condition. They suffered from lice and infected bug bites all resulting from poor and improper hygiene and the continuation of these conditions subjected the minor children to substantial harm.

Mr. Wilson also argues that the children were subjected to "moral harm" by residing in the home with Ms. Wilson and Mr. Clark without the benefit of marriage. Furthermore, Mr. Wilson is concerned about the incident in the Smoky Mountains when Jonathan was allowed to jump into Little River from the ledge despite warning signs.

Mr. Wilson asserts that the incidents when Mr. Clark administered corporal punishment to both minor children prior to his marriage and after Mr. Wilson requested that Mr. Clark not discipline the minor children in this manner also subjected these children to substantial harm. Most specifically, Mr. Wilson argues that Mr. Clark admitted taking Cassidy into a room alone and whipping her with a "hickory" following a bathroom accident while playing miniature golf on

vacation. Mr. Wilson argues that this type of punishment is inappropriate, especially for a bathroom accident according to the testimony of Dr. Bean.[8]

In the Trial Court's Findings of Fact and Conclusions of Law, seven (7) incidents were listed by the Court as "activities, behaviors, and actions on the part of the Defendant and those residing in her household, clearly cause danger or harm to the mental and/or emotional well-being of the minor children":

> A. The Defendant has exposed the parties' minor children to an inappropriate relationship with a live-in boyfriend prior to marriage, which was only resolved by the Defendant's marriage to said boyfriend several days following entry of the Temporary Restraining Order in this cause.
>
> B. The Defendant and her previous boyfriend/now husband have admittedly and repeatedly exhibited poor judgment and have made harmful choices and decisions in regard to the minor children. Specifically, Defendant and her boyfriend allowed the parties' six year old son to jump off of a 25 ft. high ledge at the "sinks" on Little River in the Smoky Mountains, despite the numerous warning signs and danger notifications posted in the area, as evidenced by the introduction of Plaintiff's trial exhibits.
>
> C. The Defendant improperly allowed her boyfriend, prior to their marriage, to inappropriately discipline the parties's children, ages 5 and 8, by whipping them with "hickories". Specifically, Defendant's boyfriend whipped the parties' son after he had jumped off a bunk bed and after he had thrown sand in the back yard. In addition, the Defendant has also allowed the said boyfriend, following their marriage and while this case was pending to inappropriately whip the parties' minor daughter, age 5, after having a bathroom accident in her clothing while visiting a miniature golf course on their vacation.
>
> D. The testimony of Dr. Michael Bean, the minor children's pediatrician, which was submitted by deposition at trial, reveals that whipping as a form of discipline and/or punishment is often counter-productive and is an inappropriate form of punishment for bathroom accidents with young children.

---

[8] Dr. Michael W. Bean is the pediatrician for the minor children at Maryville Pediatrics and has treated the minor daughter for a variety of problems related to her urinary tract. Dr. Bean is also the pediatrician for the minor son.

E. The Defendant has failed to completely and properly administer antibiotic treatment to the parties' minor daughter, who suffered from a urinary condition called reflux. In addition, the Defendant continually fails to properly maintain the minor daughter's hygiene in her private areas while said child is in her care as evidenced by the child's underwear removed following her visits with the Defendant and introduced as exhibits to testimony. The Defendant's failure to properly maintain said child's hygiene has caused the child to suffer from repeated and painful yeast infections. Dr. Bean also testifies and the Court finds that a parent who fails to properly maintain the hygiene in private areas of a child suffering from reflux is placing such a child in danger of suffering from potential kidney scarring and permanent damage.

F. Both the Defendant and her former boyfriend/husband are both unemployed, the Defendant having voluntarily terminated her employment with a bank, and her husband having accepted unemployment compensation as a result of a voluntary layoff from his employment. However, prior to the Defendant's resignation of her employment, the children were left daily in the care of their new stepfather for lengthy periods of time.

G. On several occasions, the Defendant failed to attend the children's educational and parent/teacher conferences and doctor appointments when same were scheduled and coordinated with and by the Plaintiff.

Ms. Wilson testified at the final hearing that she and Mr. Clark did move in together in December, 1998 and resided with the minor children prior to Mr. Wilson filing the petition. According to her testimony, they had already planned a February wedding. Because of the petition, Ms. Wilson testified she and Mr. Clark decided to get married immediately and had a civil ceremony in January and a religious ceremony in February. There is no proof in the record that the children suffered substantial harm due to the decision by Ms. Wilson and Mr. Clark to live together.

Additionally, Ms. Wilson and Mr. Clark both testified that they did allow Jonathan to jump from the twenty-five (25) foot ledge into Little River despite warning signs. Again, there is no proof in the record that the minor son suffered any substantial harm due to this incident. We believe this demonstrates poor judgment on the part of Ms. Wilson and Mr. Clark, but does not rise to the level of a change in circumstance which is required as to prevent substantial harm.

As for the issue of corporal punishment, Mr. Wilson testified that he told Ms. Wilson that he did not think it was appropriate for her boyfriend, Mr. Clark, to be "spanking my children." Mr. Clark testified about conversations between himself and Mr. Wilson, and he further testified that he was aware Mr. Wilson preferred that he not use corporal punishment when punishing these minor

children.  It is obvious from Dr. Bean's testimony by deposition that corporal punishment for accidents related to body functions is never appropriate.  Additionally, Mr. Wilson was very clear as to his feelings about corporal punishment with respect to the minor children.  Mr. Clark showed total disregard for the wishes of Mr. Wilson, there again demonstrating poor judgment.  Ms. Wilson, again exhibited poor judgment by allowing her boyfriend to continue to punish the minor children in a manner that was unacceptable to Mr. Wilson.  While we recognize that children should be disciplined and that step-parents should be allowed to discipline the children residing in their household, there are other means of punishing children than whipping them with a "hickory" when one of their parents has specifically stated a preference against the use of such punishment.

The use of corporal punishment for a bathroom accident is never a good idea according to the testimony of Dr. Bean.  The testimony of Ms. Wilson concerns this Court.  She testified inconsistently about the incident on vacation.  She testified that she did not know whether or not Mr. Clark "spanked" the minor daughter.  She refused to answer the questions asked of her on cross-examination by opposing counsel and was very evasive in what she did say.  She became angry with opposing counsel and was determined to protect Mr. Clark regarding the incident at the miniature golf course.

Mr. Clark testified that he told the minor child while on the putt-putt golf course that he was going to spank her when they got back to the hotel room.  According to testimony, the child soiled her panties when the family first arrived at the golf course, but Mr. Clark and Ms. Wilson decided to go ahead and play the course.  Mr. Clark testified that he did take the child into a room alone and talk to her and whip her with a "hickory."  Again, this problem alone does not rise to the level of a change in circumstance such that a change in custody is required to prevent substantial harm to the minor children.

This is, however, consistent with most of Ms. Wilson's  testimony throughout the trial.  When asked questions about the medication she was to administer to Cassidy she could not remember anything specific about the condition, doctor's appointments, treatment, medications, prescription refills, or anything related to the treatment of the reflux or the other related health problems that Cassidy had.  Ms. Wilson testified that Cassidy might have had head lice as long as a week before Mr. Wilson treated it, and Cassidy was in the home of Ms. Wilson during that period of time.  Most of the medical treatment these minor children received was because Mr. Wilson was proactive in caring for their medical needs, which appeared to have been ignored for the most part by Ms. Wilson.

The ultimate concern of this Court, and the issues this case turns on  are the allegations of improper hygiene and negligent health care of the minor children.  It is evident from the deposition of Dr. Bean that Cassidy suffers from a condition called reflux, which means a valve between a kidney and the bladder is not functioning properly.  Mr. Wilson took Cassidy to Maryville Pediatrics in June, 1997 when she began having health problems related to her urinary tract.  She was referred to a urologist, Dr. Nuygen, for three visits.  A diagnosis of a grade two vesicoureteral reflux on the left side was made and prescription medication was to be administered.  Dr. Bean further testified that

when a patient has a reflux condition such as this, even a simple bladder infection can lead to a kidney infection. The kidney can then become infected and can eventually result in scarring of the kidney and kidney damage. Therefore, it is very important that urinary tract infections be avoided.

The prescription medication prescribed by Dr. Nuygen was to be administered for at least six months, and possibly a year. At a prior hearing Mother testified she had the prescription filled initially the first month. When the medication was gone, she was unable to get a refill because Mr. Wilson had already obtained the refill for the second month. Mr. Wilson gave half of his refill to Ms. Wilson. After that, Ms. Wilson testified that she never obtained any more of the prescription medication and that she did not remember how long she was to give medication to the child or how long she did give it to her, but that she did give it to her. She also testified that she could not remember if any other medications were to be administered.

Dr. Bean also testified that on January 6, 1999, Mr. Wilson took the minor daughter for a genital and urinary tract assessment. The medical records reflect that the child had just been picked up from Ms. Wilson's home. Dr. Bean testified that the notes from his assessment state that the minor child's vaginal area was inflamed accompanied by a significant lack of hygiene. Dr. Bean discussed the importance of proper hygiene and cleanliness and prescribed an ointment to reduce the inflammation.

The child returned to Maryville Pediatrics on January 14, 1999. The minor daughter was seen by the nurse practitioner and diagnosed with a "yeast infection secondary to poor hygiene." The minor daughter was seen at the non-emergency clinic on February 24, 1999 and diagnosed with "non-specific vaginitis." A follow-up visit on March 1, 1999 indicates that the condition was improving. On May 14, 1999, Mr. Wilson took the minor daughter to Maryville Pediatrics for a check-up. According to the medical records the child had been with Ms. Wilson the previous week. The notes indicated "mild erythema, which indicates redness with some vulva irritation."[9] The child was again treated with prescription medication.

Upon review of the record in this case we find that the evidence does not preponderate against the Trial Court's finding that a material change in circumstance exists and that a change in the final divorce decree as to custody is necessary to prevent substantial harm to these minor children. Upon finding the change in circumstance, we must now determine if the Trial Court abused its discretion in changing residential custody from Ms. Wilson to Mr. Wilson. In determining the custody of a minor child, the welfare and best interest of the child are the predominant concerns of the court. *In re Parsons*, 914 S.W. 2d 889 (Tenn. Ct. App. 1995). This Court further stated in *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996):

---

[9] The medical records describe in more specific detail the lack of hygiene and resulting physical state of Cassidy's vaginal area. Because of the sensitive nature of this matter, we have chosen to limit our discussion to the aforementioned. However, the description in the record of the condition of this child's vaginal area is very disturbing.

Divorce affects children profoundly by undermining their sense of stability and well-being. Thus, custody and visitation arrangements are among the most important decisions confronting a trial court in a divorce case. The needs of the children are paramount; while the desires of the parents are secondary. *Lentz v. Lentz,* 717 S.W.2d 876, 877 (Tenn. 1986). Custody should never be used to punish or reward the parents, *Turner v. Turner*, 919 S.W.2d 340, 346 (Tenn. Ct. App. 1995); *Long v. Long*, 488 S.W.2d 729, 733 (Tenn. Ct. App. 1972), but rather should promote children's best interests by placing them in an environment that will best serve their physical and emotional needs. *See Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983).

In determining the best interest of a child and in engaging in the comparative fitness test, subtle factors such as parents' demeanor and credibility during the pendency of the divorce trial can be a determining factor for the Trial Court. *Gaskill v. Gaskill*, 936 S.W.2d 626 (Tenn. Ct. App. 1996). Additionally, the trial court must also consider the statutory factors as set forth in T.C.A. 36-6-106. In this matter, the Trial Court found that based on the "evidence, exhibits, testimony, and the credibility and demeanor of the parties and their witnesses" Mr. Wilson was the more comparatively fit custodian and listed the following reasons:

H. The Plaintiff provides all necessary medical care, treatment and attention for both children while they are in his care and specifically provides the necessary medical and hygiene care and attention for the parties' minor daughter, who suffers from reflux, as evidenced in Dr. Bean's medical records and charts which were made an exhibit to his deposition.

I. The Plaintiff, with the help of his new spouse, successfully and appropriately maintains the minor daughter's hygiene in her private areas while she is in his care by administering routine sitz baths and by teaching her proper personal hygiene techniques.

J. The Plaintiff properly and completely administers the minor children's medications and ensures said children have the proper medical care and treatment.

K. The Plaintiff maintains a suitable home and environment for the minor children, as well as appropriate routines and responsibilities for the children while they are in his care.

L. The Plaintiff, at no time, has ever exposed the children to an overnight relationship with a woman to whom he was not married.

M. The Plaintiff is employed full time, as he has been since the parties' divorce, and his new spouse is receiving nursing training.

N. The Plaintiff is willing to encourage a continuing parent/child relationship between the children and the Defendant and desires that she be afforded visitation.

O. The minor children have adapted and adjusted well to residing with the Plaintiff and being in the Plaintiff's care.

P. The Plaintiff has superior parenting skills in comparison with the Defendant's parenting skills.

It is evident from the record that Mr. Wilson is a very concerned and competent parent to these minor children. He has sought almost all the medical attention that these children have required. He has made more reponsible parenting decisions than Ms. Wilson and Mr. Clark. Mr. Wilson has been involved in the educational process of these children while they were in his custody and even more so when they were in the custody of Ms. Wilson. The minor children appear to have a healthy relationship with both parents. Mr. Wilson's attentiveness to these children far exceeds that of Ms. Wilson, and we believe that it is in the best interest of these minor children to reside with Mr. Wilson.

We find that the Trial Court did not abuse its discretion in changing residential custody from Ms. Wilson to Mr. Wilson. In light of the foregoing, we affirm the judgment of the Trial Court and remand for such further proceedings, if any, consistent with this opinion. We adjudge costs of this appeal against the Appellant, Sandra Kay Wilson, and her surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE