IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 20, 2003 Session

**JENNIFER CHANTE BURNETT v. CHRISTOPHER JOHN BURNETT**

**Appeal from the Circuit Court for Knox County**
**No. 88131      Bill Swann, Judge**

_**FILED JULY 23, 2003**_

**No. E2002-01614-COA-R3-CV**

Jennifer Chante Burnett ("Mother") filed a Complaint for Absolute Divorce seeking a divorce from Christopher John Burnett ("Father") and requesting to be designated as the primary residential parent of the parties' minor daughter. Father filed an answer and counterclaim wherein he also sought a divorce and to be the primary residential parent. After a trial, the Trial Court determined it was in the best interests of the minor child for Father to be the primary residential parent, and entered judgment accordingly. Mother appeals, claiming the Trial Court failed to consider all relevant factors when making its custody determination and that the Trial Court's conclusion with regard to custody was intended to punish Mother and reward Father. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Circuit Court Affirmed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Jerrold L. Becker, Knoxville, Tennessee, for the Appellant Jennifer Chante Burnett.

D. Vance Martin, Knoxville, Tennessee, for the Appellee Christopher John Burnett.

# OPINION

## Background

In May of 2001, Mother filed a Complaint for Absolute Divorce seeking a divorce from Father on the basis of inappropriate marital conduct or, in the alternative, irreconcilable differences. The parties had been married for eight years and had one minor child, a daughter ("Daughter"), who was six years old when the complaint was filed. Mother sought primary residential custody of Daughter. Father filed an answer and counterclaim and later amended these pleadings seeking a divorce from Mother on the same grounds. Father, likewise, sought primary residential custody of Daughter.

On June 19, 2001, the parties filed an Agreed Temporary Parenting Plan which designated Mother as the primary residential parent and granted Father co-parenting time in accordance with Rule 26 of the Local Rules of Court.[1] The terms of the Agreed Temporary Parenting Plan were incorporated by reference into an Agreed Order entered by a Referee approximately one week later. On September 21, 2001, Father filed a Petition for Contempt claiming Mother had willfully and intentionally denied him co-parenting time on numerous occasions. Mother denied these allegations and filed a separate action requesting an Order of Protection. A hearing was held on Father's Petition for Contempt at which time Father agreed to dismiss his petition and, in return, Mother agreed to dismiss the separate action requesting an Order of Protection. The parties also acknowledged and affirmed that the terms of the previously entered temporary parenting plan were still in effect pending further order of the Court. Thus, Father still was entitled to co-parenting time in accordance with Local Rule 26. An Agreed Order was entered on December 3, 2001, setting forth these agreed upon terms. Notwithstanding the foregoing, Mother appeared in court approximately 10 days later and received an Order of Protection which provided Father with less visitation than provided for in Local Rule 26. On January 17, 2002, Father filed a second Petition for Contempt claiming Mother continued to deny him co-parenting time. Father also claimed Mother "habitually provokes, aggravates dissension, and unnecessarily creates conflict at co-parenting exchanges." Mother denied these allegations.

A trial was conducted in April of 2002. At the time of trial, Mother was 28 years old. Mother had completed her High School education and approximately 2.5 years of college. During the marriage, Mother was Daughter's primary caregiver. Mother testified to the various cultural and extracurricular activities in which Daughter participated, such as ballet and soccer. Mother registered Daughter for the vast majority of these activities and provided transportation. Mother also attended many of Daughter's classroom activities and field trips. According to Mother, she normally prepared the family dinner and would later get Daughter ready for bed, even when Father was home.

---

[1] Local Rule 26 was established by the 4th Circuit Court in Knox County and sets forth a detailed schedule for co-parenting time of the non-residential parent if the parties are otherwise unable to reach an agreement. Among other things, the Rule provides for co-parenting time of the non-residential parent on alternating weekends and one evening during the week in which the non-residential parent is not exercising weekend visitation.

Mother lived with her parents and brother in a bi-level home. Mother and Daughter had a separate living area and each had their own bedroom.

Mother testified her first attorney did not explain to her the specifics of Local Rule 26 and what that Rule required. Nevertheless, Mother claimed she allowed Father to have co-parenting time every weekend in June and July of 2001, and every other weekend in August through December of that same year. Mother acknowledged that in December of 2001, she agreed to dismiss her request for an Order of Protection and, in return, Father agreed to dismiss the Petition for Contempt. Mother went on to assert that neither her nor Father's attorney followed through with this by entering an order dismissing her request for an Order of Protection. As a result, Mother received notification that her request for an Order of Protection had been set for a hearing. Mother claims she then called her attorney's office regarding the hearing date but received no response. Because she was unsure what to do, Mother showed up for the hearing and obtained an Order of Protection Without Social Contact against Father.[2] Neither Father nor his attorney were present at this hearing. This Order provided Father with substantially less co-parenting time than set forth in Local Rule 26. Mother stated her attorney was present in court the day she obtained the Order of Protection, but he refused to offer her any assistance. Thereafter, Mother terminated the attorney-client relationship and obtained new counsel. Mother claims that once her new attorney properly explained the requirements of Local Rule 26 to her, she complied with that Rule and also dismissed the Order of Protection. Mother testified Father was a good parent and it was not her intention to deny him co-parenting time, but she did want to maintain consistency and stability in Daughter's life.

On cross-examination, Mother admitted she was present in Court when the agreement was reached that Father would receive co-parenting time in accordance with Local Rule 26. Mother also was present in Court when the parties announced to the Court that Father would dismiss the Petition for Contempt and Mother would dismiss her request for an Order of Protection. Mother admitted she nevertheless appeared before a different judge and "prosecuted" the Order of Protection which, among other things, provided Father with substantially less co-parenting time than that which was provided for in Local Rule 26. Mother also admitted she withdrew from college classes five of the previous six semesters and remained unemployed when she was not attending school.

Mother called her mother, step-father, and a friend to testify on her behalf. All three of these witnesses testified to the very good relationship between Mother and Daughter as well as Mother's excellent parenting skills. All three witnesses further stated they have never observed any conduct by Mother that was out of the ordinary or which exposed Daughter to any negative influence. These witnesses also stated Father was a good father.

At the time of trial, Father was 38 years old and employed at a bank as a retail lender. Father earned a Bachelor of Science degree in finance from the University of Tennessee. He had worked in various banking jobs over the years, except for a two-year period when he tried to start several small businesses. During this two-year period, Father supported the family by using his

[2] The Order of Protection was not entered by the same Judge which presided over the divorce and custody trial.

retirement account and credit cards which were listed solely in his name. Father acknowledged Mother was a "hands-on" parent and significantly participated in Daughter's extracurricular activities. However, Father claimed he also attended a majority of these activities. Although the businesses Father started eventually proved unsuccessful, he pointed out that working at home during this time enabled him to develop a strong bond with Daughter. According to Father, when he was employed full-time at a bank, he became the parent "on duty" when he came home from work.

Father testified that when the divorce process began, Mother called him at work and told him not to come home and his personal belongings were in the trash. Father claimed he was only allowed access to Daughter when Mother would allow it and he did not have a consistent schedule for visitation. After the parties entered into the Agreed Order confirming Local Rule 26 co-parenting time was applicable, Mother still only would allow co-parenting time "on her clock" every other weekend. Regardless of how long Local Rule 26 permitted Father to exercise co-parenting time, Mother would threaten to call the police if Father did not return Daughter when demanded by Mother. Mother would not allow Father to have regular phone contact with Daughter. Mother even told Father "[a]nother man can raise her better than you."

Father acknowledged filing a Petition for Contempt and a proposed parenting plan identifying himself as the primary residential parent. Father claims soon after these were filed, Mother called him stating since he was seeking custody, she would not allow him to visit Daughter as they had agreed. Mother also allegedly stated to Father that "she didn't care what had been agreed to in Court, she had her own plan." Father eventually dismissed the Petition for Contempt and Mother agreed to dismiss her request for an Order of Protection. Father stated he did not receive co-parenting time in accordance with Local Rule 26 even though there was an agreed order stating that he would. He did not receive Local Rule 26 co-parenting time until January of 2002.

Father called his mother and his pastor to testify on his behalf. Both of these witnesses testified to what they observed as a very good father/daughter relationship. Father testified he was prepared to move into Daughter's current school district in order to maintain stability and continuity in her life.

After returning to full-time employment with a bank, Father obtained a second, part-time job in order to assist in reducing the marital debts. Father testified he would not be able to maintain this second job if he obtained primary residential custody of Daughter. Nevertheless, Father testified he was willing to assume all of the marital debt. He also stated he would not request any child support, preferring that the Mother "use those funds for her education." As to grounds for the divorce, Father testified that throughout the marriage, Mother was physically violent with him, often hitting him in the face. Father claimed he never retaliated against Mother for these actions.

After the trial was completed, the Trial Court issued a memorandum opinion which later was incorporated into its final judgment. In the memorandum opinion, the Trial Court concluded both Mother and Father were fit parents. The Trial Court was, nevertheless, troubled by Mother's credibility, noting it was at a loss on how "to square what the mother says with her own

actions." For example, the Trial Court observed that on December 3, 2001, the parties reached an agreement which was explained to them, and "not 10 days later the mother comes to court and obtains an Order of Protection in complete contradiction to the agreement." At a minimum, this revealed to the Trial Court a desire on Mother's part to diminish Father's role in the child's life, and was the "first of several instances of low credibility explanations" on Mother's part. The Trial Court also discussed how Mother had "varied, reduced, altered [and] made conditional" Father's co-parenting time.

When discussing the parties' marital debt, the Trial Court noted Father had agreed to assume all of this debt, which the Trial Court described as an "extraordinarily decent thing to do." In the Trial Court's opinion, Father was an excellent and responsible role model for Daughter. The Trial Court also credited Father's testimony that when he came home from work, he became the "parent on duty." The Trial Court also noted that when Father testified he did not want any child support should he obtain custody, "[a]nother remarkable moment occurred in this cause."

After discussing various aspects of the proof presented at trial, the Trial Court stated it was "unquestionable" that of these two parents, it was only Father who would gladly and creditably encourage contact with the other parent. The Trial Court also ordered Mother to pay child support based on her ability to earn an income. For the first 36 months, the Trial Court ordered child support payments to be placed into an IOLTA account. Then:

> If the child support is fully and timely paid during each and every semester/quarter in which the mother has progressed successfully and orderly toward the receipt of a degree and the department tells you about that, then counsel shall submit an Agreed Order to the Clerk disbursing the child support monies timely and fully paid into the account to the mother and in semesters and quarter[s] where that doesn't occur or is not timely or it's not progression to the degree, then the Order shall disburse the same to the father. The Court wants this daughter to have a mother who has completed her education and goes on to full-time employment.[3]

After discussing other issues not directly pertinent to this appeal, the Trial Court stated it found Father to be "more than a good father.… [H]e's an exception among men and an outstanding parent." The Trial Court then entered a final judgment which, *inter alia*, designated Father as the primary residential parent.

---

[3] Mother sought rehabilitative alimony in the amount of $150 per month for three years, which would enable her to complete her college education. Mother expressed her intent to complete a teaching program and in-service requirements during this same time. The Trial Court denied Mother's request for alimony, noting that the manner in which the child support was addressed would assist Mother in completing her education. The denial of Mother's request for alimony is not at issue on appeal.

Mother appeals, claiming the Trial Court failed to properly compare the fitness of the parties and consider all of the factors set forth in Tenn. Code Ann. § 36-6-106, in light of the welfare, needs, and best interests of Daughter. Mother also claims the Trial Court reached its conclusion regarding custody as a way to punish Mother and reward Father.

## Discussion

The standard of review on appeal for issues addressing child custody and visitation was set forth by our Supreme Court in *Suttles v. Suttles*, 748 S.W.2d 427 (Tenn. 1988), and recently reaffirmed in *Eldridge v. Eldridge*, 42 S.W.3d 82 (Tenn. 2001). In *Suttles*, the Court acknowledged the general rule that:

> Although … "the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge," *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. App. 1973), and that the trial court's decision will not ordinarily be reversed absent some abuse of that discretion, "in reviewing child custody and visitation cases, we must remember that the welfare of the child has always been the paramount consideration" for the courts. *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983).…

*Suttles*, 748 S.W.2d at 429. The Supreme Court further explained the abuse of discretion standard in *Eldridge*, stating:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

*Eldridge*, 42 S.W.3d at 85.

The factors to be considered by the court in child custody matters are set forth in Tenn. Code Ann. § 36-6-106(a) and include, but are not limited to, the love, affection and emotional ties existing between the parents and child; the disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care; the degree to which a parent has been a primary caregiver; the importance of continuity in the child's life and the length of time the

child has lived in a stable, satisfactory environment; the stability of the family unit of the parents; the mental and physical health of the parents; the home, school, and community record of the child; and each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and other parent, consistent with the best interest of the child. In addition, Tenn. Code Ann. § 36-6-101(d) establishes "the legislative intent that the gender of the party seeking custody shall not give rise to a presumption of parental fitness or cause a presumption or constitute a factor in favor or against the award of custody to such party."

Mother claims the Trial Court failed to properly compare the fitness of the parties because it did not consider all of the relevant factors contained in Tenn. Code Ann. § 36-6-106(a). We disagree. This statute does require a trial court to consider all of the listed factors which are applicable. However, the statute does not require a trial court, when issuing a memorandum opinion or final judgment, to list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination.[4] We have carefully reviewed the entire record on appeal including the Trial Court's memorandum opinion and conclude the Trial Court properly considered all of the relevant factors when it found that both Mother and Father were fit parents. We agree that they are.

After reaching the above conclusion, the Trial Court then was confronted with the daunting task of determining which of these two fit parents should be designated the primary residential parent in accordance with the best interests of Daughter. In so doing, the Trial Court relied in part on credibility determinations as well as what it considered to be Father's ability to facilitate and encourage a close and continuing parent-child relationship between Mother and Daughter, consistent with the best interests of the child. *See* Tenn. Code Ann. § 36-6-106(a)(10). It also must be remembered that the Trial Court concluded Mother had taken affirmative steps to thwart any such relationship between Father and Daughter. The preponderance of the evidence does not weigh against these factual findings. Because the statute required the Trial Court to consider, along with other factors, both parents' ability to encourage a close relationship between the child and other parent, we must reject Mother's argument that by doing so the Trial Court improperly punished her and rewarded Father. This simply is not supported by the record. We are convinced from our review of the entire record that the Trial Court did consider all relevant factors when it found that it was in the best interest of Daughter for Father to be the primary residential parent.

When rendering its judgment, the Trial Court specifically discussed the relative credibility of the parties which was based on its observation of the parties at trial and comparison of the demeanor of all the witnesses, including Father and Mother. Trial courts, when determining custody matters, take into account a number of factors, "including the parents' demeanor and credibility during the . . . proceedings themselves." *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001) (quoting *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996)). "Unlike this Court, the trial court observed the manner and demeanor of the witnesses and was in the best

---

[4] Of course, in cases such as this we strongly encourage trial courts to be as detailed as possible.

position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). A trial court's determinations regarding credibility are accorded deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). We find no such clear and convincing evidence in the present case.

We believe the record fully supports a conclusion that both Mother and Father are fit parents. In this appeal, the only real issue we must decide is whether the Trial Court abused its discretion when concluding it was in Daughter's best interest for Father to be the primary residential parent. It is in this type situation, where the mother and father both are fit parents, that a trial court truly must exercise its discretion in determining the comparative fitness of the parents. The Trial Court did just that. We hold that the Trial Court's determination that of these two fit parents, Father was more fit and, therefore, that it was in Daughter's best interest for Father to be the primary residential parent was not error.

### Conclusion

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellant, Jennifer Chante Burnett, and her surety.

_____
D. MICHAEL SWINEY, JUDGE