IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
MARCH 30, 2006 Session

## LORI ANN RUSS v. STEVEN RUSS

**Direct Appeal from the Chancery Court for Giles County**
**No. 2956     Jim T. Hamilton, Chancellor**

---

**No. M2005-00602-COA-R3-CV - Filed on June 6, 2006**

---

This appeal stems from a divorce case.  In this appeal, we are asked to determine whether the chancery court erred when it named the wife as the primary residential parent, when it adopted a visitation schedule requiring the children to be transported between husband and wife on a daily basis during the week, and when it declined to award husband alimony.  The husband contends on appeal that naming him primary residential parent and adopting his permanent parenting plan would be less disruptive on the children.  Further, he asserts that the court should have awarded him alimony as he was the economically disadvantaged spouse and has a limited income due to his medical condition.  We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J., and DONALD P. HARRIS, S.J., joined.

J. Russell Parkes, Wesley Mack Bryant, Columbia, TN, for Appellant

Paul A. Bates, Lawrenceburg, TN, for Appellee

# MEMORANDUM OPINION[1]

## I. FACTS & PROCEDURAL HISTORY

On November 22, 1990, Lori Ann Russ ("Wife" or "Appellee") and Stephen Allen Russ ("Husband" or "Appellant") were married. In 1994, Husband was diagnosed with Multiple Sclerosis Leaper Optic Neuropathy, which caused problems with his vision. As a result, Husband applied for and received social security disability benefits. Wife is an employee of Johnson Controls, Inc. During the marriage, Wife engaged in an extra-marital affair. Husband found out about the affair, which led to arguments between the parties over the affair. When Wife eventually attempted to leave the home permanently with one of the children, Husband called the police. Before the police arrived, an altercation ensued between Husband and Wife. When the police arrived, they arrested Husband.

Afterwards, the parties separated for three weeks before reconciling. The period of reconciliation was a tenuous one. On July 16, 2004, Wife filed for divorce. In her complaint for divorce, Wife alleged inappropriate marital conduct and, in the alternative, irreconcilable differences. On August 24, 2004, Husband filed an answer to Wife's complaint. On August 27, 2004, the chancery court conducted a *pendente lite* hearing. Afterwards, the chancery court entered an order allocating the payments of the parties' debts, approving a temporary parenting plan naming Wife as primary residential parent, and setting parenting time for husband.

On October 12, 2004, Husband filed a counter-complaint for divorce alleging adultery, inappropriate marital conduct, and irreconcilable differences. Thereafter, Wife filed an answer to Husband's counter-complaint alleging condonation as a defense to Husband's claims of adultery. After conducting a trial, the chancery court entered an order divorcing the parties, separating the parties' debts and marital assets, and declining to award alimony to Husband. Additionally, the chancery court's order adopted the permanent parenting plan submitted by Wife with some modifications. Specifically, the chancery court modified the proposed parenting plan as follows:

> Page 2, II.A. The children will be delivered to the residence of the father each morning on mother's trip to work, except as hereinafter stated, and she will pick them up on her way home following the completion of her work day. On occasions when

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee governs the issuance of Memorandum Opinions, which states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

mother is required to report to work prior to 7:00 a.m., mother will deliver the children to father by 8:30 p.m. on the preceding evening.

Mother will deliver the children to father on mother's way to work every morning and father will insure the children get to school if school is in session.

Page 3, II.E. The summer schedule will be the same as the school year schedule with the exception that father will have two non-consecutive weeks during the summer months and mother will have the children during the times of her vacation.

Page 3, III.A. The first paragraph is deleted and the following substituted: Neither party will pay any child support to the other party and the monthly social security checks resulting from benefits of the father due the children will be equally divided between the parties. The Court has deviated from the child support guidelines due to the amount of time the children are with each party and the disportionate allocation of debts.

Page 4, D. The following is substituted: The mother will maintain medical/hospital/dental insurance on the minor children and the father will reimburse mother one-half of the cost of same. Uncovered medical and dental expenses, which includes deductibles or co-payments, eye glasses, contact lenses, routine annual physicals, and orthodontics will be equally divided between the parties.

## II. ISSUES PRESENTED

Appellant has timely filed his notice of appeal and presents the following issues for review:

1. Whether the chancery court erred when it named Wife the primary residential parent and adopted a parenting plan that called for the minor children to be transported between the parties every workday; and
2. Whether the chancery court erred when it declined to award alimony to Husband.

For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

# III.  DISCUSSION

## A.  *Primary Residential Parent*

On appeal, Appellant asserts that the chancery court erred when it designated Appellee as the primary residential parent.

This Court reviews a trial court's determination of child custody under an abuse of discretion standard. ***Herrera v. Herrera***, 944 S.W.2d 379, 385 (Tenn. Ct. App. 1996). Thus, this Court must uphold a trial court's ruling "so long as reasonable minds can disagree as to propriety of the decision made." ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted). "A trial court abuses its discretion only when it 'applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining.'" ***Id.*** (citations omitted). When reviewing a trial court's discretionary decision, "[this Court] . . . begins with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." ***Overstreet v. Shoney's Inc.***, 4. S.W.3d 694, 709 (Tenn. Ct. App. 1999) (citing *In re Conservatorship of Scharles*, 233 Cal. App. 3d 1334, 285 Cal. Rptr. 325, 329 (Ct. App. 1991); *Citicorp Mortgage, Inc. v. Burgos*, 227 Conn. 116, 629 A.2d 410, 412 (Conn. 1993); *Onwuteaka v. Gill*, 908 S.W.2d 276, 280 (Tex. Ct. App. 1995)). This Court "should permit a trial court's discretionary decision to stand if reasonable judicial minds can differ concerning its propriety." ***Id.*** (citations omitted).

When devising custody determinations, the trial court engages in a comparative fitness analysis. ***Gaskill v. Gaskill***, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996) (citations omitted). In doing so, the court must consider the factors enumerated in section 36-6-106 of the Tennessee Code. Section 36-6-106 of the Tennessee Code provides:

> (a)  In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
>
>   (1)  The love, affection and emotional ties existing between the parents and child;
>
>   (2)  The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
>   (3)  The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36-6-106(a)(8), of

child abuse, as defined in §§ 39-15-401 or 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) (A) The reasonable preference of the child if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, as defined in §§ 39-15-401 or 39-15-402, or child sexual abuse, as defined in § 37-1-602, against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

(b) Notwithstanding the provisions of any law to the contrary, the court has jurisdiction to make an initial custody determination

regarding a minor child or may modify a prior order of child custody upon finding that the custodial parent has been convicted of or found civilly liable for the intentional and wrongful death of the child's other parent or legal guardian.

Tenn. Code Ann. § 36-6-106 (2005).

Although Appellant has elaborated several facts as to why he would make a fit parent, he has not demonstrated that the chancery court abused its discretion. Upon our review of the record, we conclude that reasonable judicial minds could differ as to the propriety of the chancery court's decision. Nothing in the record demonstrates that the love, affection, and emotional ties between either parent and the children are lacking. While there is evidence to support that Appellant was the primary caregiver during the marriage, nothing in the record demonstrates that either parent would not be able to provide the children with food, clothing, medical care, and education. Further, nothing in the record indicates that the children do not have good home, school, and community records. The children's preference is to live with Appellant. Although Appellee has used profanity in front of the children, Appellant has used racial epithets around the children. While Appellee has no physical ailments, Appellant is afflicted with Multiple Sclerosis Leaper Optic Neuropathy and is legally blind. Further, Appellant pled guilty to domestic assault of his wife stemming from the altercation that occurred when Appellee attempted to leave Appellant with one of the children. Given these circumstances, we cannot say that the chancery court abused its discretion. Accordingly, we affirm the decision of the chancery court as to this issue.

## B. Visitation Schedule

Likewise, on appeal, Husband contends that the chancery court erred when it established the permanent parenting plan because of the disruptive nature of the visitation schedule.

Our supreme court has elaborated on this Court's standard of reviewing a trial court's establishment of a visitation schedule in *Eldridge v. Eldridge*, 42 S.W.3d 82 (Tenn. 2001), which states:

> The Court of Appeals correctly held that the standard for appellate review of a trial court's child visitation order is controlled by our decision in *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). There, we noted that "'the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge.'" *Id.* at 429 (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). Accordingly, we held that a "trial court's decision [on visitation] will not ordinarily be reversed absent some abuse of that discretion." *Id.*

> In reviewing the trial court's visitation order for an abuse of discretion, the child's welfare is given "paramount consideration," *id.*

(quoting *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983)), and "the right of the noncustodial parent to reasonable visitation is clearly favored[,]" *Id.* Nevertheless, the noncustodial parent's visitation "may be limited, or eliminated, if there is definite evidence that to permit . . . the right would jeopardize the child, in either a physical or moral sense." *Id.* (quoting *Weaver v. Weaver*, 37 Tenn. App. 195, 261 S.W.2d 145, 148 (Tenn. Ct. App. 1953)).

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

*Eldridge*, 42 S.W.3d at 85. Pursuant to section 36-4-404 of the Tennessee Code, this Court should consider the following factors when examining a court's visitation schedule:

(1) The parent's ability to instruct, inspire, and encourage the child to prepare for a life of service, and to compete successfully in the society that the child faces as an adult;

(2) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting responsibilities relating to the daily needs of the child;

(3) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interests of the child;

(4) Willful refusal to attend a court-ordered parent education seminar may be considered by the court as evidence of that parent's lack of good faith in these proceedings;

(5) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(6) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(7) The love, affection, and emotional ties existing between each parent and the child;

(8) The emotional needs and developmental level of the child;

(9) The character and physical and emotional fitness of each parent as it relates to each parent's ability to parent or the welfare of the child;

(10) The child's interaction and interrelationships with siblings and with significant adults, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(11) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(12) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

(13) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(14) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(15) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(16) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-404(b)(1)-(15) (2005).

In this case, the visitation schedule provides that Appellee will drop the children off to Appellant on her trip to work, and Appellant will take the children to school. The schedule also provided that Appellee would pick the children up on the way home from work. On days where Appellee has to work overtime, Appellee will drop the children off to Appellant by 8:30 p.m. the

night before. In the summer, the schedule would remain the same except that Appellant will get two noncontinuous weeks of sole parenting time, and Appellee will get sole parenting time for her vacation. Although this visitation schedule appears harsh, the visitation schedule does take into consideration Appellee's employment schedule and makes an accommodation for her schedule. Further, in his brief on appeal, Appellant has not demonstrated that the chancery court abused its discretion. Rather, Appellant has attempted to demonstrate how his permanent residential plan would be less disruptive on the children.[2] From our review of the record, we conclude that reasonable judicial minds could differ as to the propriety of the chancery court's decision. Thus, we cannot say that the chancery court abused its discretion when it established the visitation schedule.

## C. Alimony

Finally, on appeal, Appellant asserts that the chancery court erred when it did not award him alimony. Section 36-5-121 of the Tennessee Code provides guidance for trial courts when determining the amount of alimony a court should award a party:

> (I) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>
>   (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
>   (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
>
>   (3) The duration of the marriage;
>
>   (4) The age and mental condition of each party;
>
>   (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

---

[2] This Court is mindful that, in his brief on appeal, Appellant has used the wrong standard for reviewing the establishment of visitation schedules. Appellant has stated that the appropriate standard of review is *de novo* with a presumption of correctness for any factual findings. When there are no factual findings, Appellant states that it is this Court's responsibility to determine where the preponderance lies. As we have stated earlier in this Opinion, the appropriate standard of review in this case is an abuse of discretion standard.

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i)(1)-(12) (2005). "The two most important factors are the obligor's ability to pay and the obligee's need." *Wiltse v. Wiltse*, No. W2002-03132-COA-R3-CV, 2004 Tenn. App. LEXIS 546, at *19 (Tenn. Ct. App. Aug. 24, 2004) (citing *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984)).

"The propriety of awarding alimony as well as the adequacy of the amount of an alimony award depends upon the unique facts of each case." *Butler v. Butler*, 680 S.W.2d 467, 470 (Tenn. Ct. App. 1984). Further, "[t]rial courts have broad discretion concerning the amount and duration of spousal support." *Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994) (citing *Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993); *Jones v. Jones*, 784 S.W.2d 349, 352 (Tenn. Ct. App. 1989)). As such, "[a]ppellate courts should not interfere with the trial court's decision except when there is a clear showing that the trial court, in its discretion, reached the wrong conclusion with the result that a manifest injustice will be done if the trial court's decision is allowed to stand." *Butler*, 680 S.W.2d at 470 (citing *Crouch v. Crouch*, 385 S.W.2d 288, 293-94 (Tenn. Ct. App. 1964); *Raskind v. Raskind*, 325 S.W.2d 617, 622-23 (Tenn. Ct. App. 1959); 24 Am.Jur.2d *Divorce and Separation* § 625 (1983)).

Applying these standards to the evidence adduced at trial, we conclude that the chancery court abused its discretion when it did not award alimony to Appellant. Appellee is a healthy thirty-

five year old female. Appellee works as a factory worker and earns in excess of $45,000 per year. Appellee was awarded the marital home, the parties' automobile, and the parties' lawnmower. Although Appellant later forgave Appellee for her conduct, Appellee had committed adultery during the marriage.[3]

Appellant is thirty-seven years old, has Multiple Sclerosis Leaper Optic Neuropathy, is legally blind, and collects approximately $10,908 in social security benefits per year as his source of income.[4] Further, Appellant is a high school graduate whose last job before becoming blind was a factory/manual labor job. As a result of the divorce, Appellant was awarded $17,619.50 but was awarded no substantial marital assets. At the time Appellee filed for divorce, the parties had been married for almost 14 years. Given the parties' circumstances, the chancery court's denial of alimony was an abuse of discretion. Upon examining Appellant's ability to be rehabilitated, an award of alimony *in futuro* was proper.[5] ***See*** Tenn. Code Ann. § 36-5-121(f)(1). As such, we reverse the decision of the chancery court as to this issue and remand for a determination of the amount of alimony *in futuro* that shall be awarded to Appellant.

## IV. CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the decision of the chancery court. We remand for further proceedings. Costs of this appeal are taxed one-half to Appellant, Stephen Allen Russ, and his surety, and one-half to Lori Ann Russ, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

---

[3] Although the chancery court made no factual findings, at trial, Appellee has admitted to committing adultery, and Appellant has admitted that he reconciled with his wife and forgave her for her conduct after finding out about the divorce. In this case, Appellant's actions amounted to a condonation of Appellee's adultery. ***See Gilliam v. Gilliam***, 776 S.W.2d 81, 84 (Tenn. Ct. App. 1988) (quoting *Doe v. Doe*, 438 S.W.2d 353, 356 (Tenn. Ct. App. 1968)).

[4] This Court is mindful that, since becoming blind, Appellant held a job as a meat wrapper for a meat plant for two to three weeks.

[5] This Court is aware that Appellant stated that he intended to attend classes for sight impaired individuals in Lebanon, Tennessee or Murfreesboro, Tennessee. However, there is nothing in the record to indicate that these courses could rehabilitate Appellant to maintain the lifestyle he was accustomed to during the marriage.