**Joseph Andrew LUKE,
Plaintiff-Appellant,**

v.

**Pamela Lynn LUKE (Seward),
Defendant-Appellee.**

Supreme Court of Tennessee,
at Knoxville.

May 23, 1983.

Gerald C. Russell, Alcoa, for plaintiff-appellant.

James L. Frederick, Knoxville Legal Aid Society, Inc., Knoxville, for defendant-appellee.

OPINION

DROWOTA, Justice.

We granted Plaintiff-Appellant's Rule 11 Application For Permission to Appeal in order to review the trial court's denial of Plaintiff's out-of-state visitation with his daughter.

Plaintiff, Joseph Andrew Luke, age 32, and Defendant, Pamela Lynn Luke (Seward), age 29, were divorced in Florida July 16, 1976. Defendant, Pamela Luke, was awarded custody of their minor daughter, Rebecca, age 4 at the time of the divorce. Plaintiff was given "liberal and reasonable visitation rights" and was ordered to pay $80 per month child support.

Pamela Luke suffers from a rare disease called Fredrick Ataxia, which causes a loss of balance and deterioration of the muscles. This disease was diagnosed in 1970 and it got worse when Rebecca was born in 1972. At the time of the divorce in 1976, Defendant was using a walker. For the past three years, she has been confined to a wheelchair. Her prognosis is not predictable.

She stated that it could get worse in three months, a year, five or ten years, and then again, it may not progress at all. She is unable to get out of bed and into her wheelchair by herself, but she can operate her wheelchair when she is in it and can drive her specially equipped automobile once she is in it.

Shortly after their divorce in 1976, Joseph Luke moved to Alabama. In June, 1980, he married Virginia Luke, who has a twelve-year-old daughter, Sherry Ann. Mr. Luke presently resides in Red Level, Alabama, approximately 535 miles from Sevier County.

Pamela Luke, who had remained in Florida with her daughter after the divorce, moved to Pigeon Forge, Sevier County, Tennessee, in June of 1981. She was married to Mr. Seward when she moved to Sevier County. Mrs. Luke divorced Mr. Seward in mid-February 1982. She has no family in the Sevier County area, and Mr. Seward provides no support or assistance. She and her daughter live in a trailer park, where her monthly expenses for lot rental and mobile home payment total $173.70. Including child support payments and social security benefits for her daughter and herself, she has a total income of $776.00 per month. Mr. Luke, as a machine shop welder, makes $184.42 per week take-home, approximately the same monthly income as Defendant.

On September 25, 1981, Joseph Luke filed a complaint in the Chancery Court for Sevier County seeking specific visitation privileges. A hearing was held on December 16, 1981, for the purpose of determining Plaintiff's visitation privileges with his daughter during the Christmas holidays of 1981. Plaintiff requested that his daughter be allowed to come to his home in Alabama for a period of seven days during the holidays. The Defendant and her counsel advised the court that she would be more willing for her daughter to go to Alabama in the summer than at Christmas because she was very attached to the daughter emotionally during Christmas. The Chancellor denied Plaintiff's out-of-state request but allowed

him visitation privileges with his daughter in Tennessee from 8 a.m. through 4 p.m. and 6 p.m. to 9 p.m. during the holidays.

Plaintiff brought his wife, Virginia, and step-daughter, Sherry Ann to Sevier County in order that he might visit his daughter, Rebecca, for eight days during the Christmas holidays. Virginia testified that Rebecca appeared to have a strong affection and love for her father. She stated: "I love her just like my own." Rebecca testified that she loves her mother and father and she knows they love her.

On March 12, 1982, a subsequent hearing was held in which Plaintiff sought to have his daughter visit him at his home in Alabama for six weeks during the summer vacation of 1982, and one week during the Christmas vacation. Once again, the Chancellor denied Plaintiff's request for visitation outside the state of Tennessee, but did allow Plaintiff liberal visitation within Tennessee. It was from the decree entered May 5, 1982, which limited visitation privileges within the State of Tennessee, that Plaintiff perfected his appeal to the Court of Appeals. The Court of Appeals, in an opinion released February 24, 1983, affirmed the Chancellor's decree. On March 23, Plaintiff filed an Application For Permission to Appeal in this Court. Mrs. Luke filed her response on April 7, 1983, and on April 25, this Court granted Plaintiff's Rule 11 Application and set this cause for the May session in Knoxville.

The thrust of Plaintiff's appeal is that the Chancellor considered the welfare of Pamela Luke rather than the welfare of Rebecca in denying him the right to take his daughter to Alabama with him. Pamela Luke testified that her daughter helps her get dressed in the morning and get into her wheelchair and helps her undress in the evening, helps her take a bath, helps her cook, helps her use the bathroom about one or two o'clock a.m., and helps her keep the mobile home clean. Rebecca testified that she goes shopping for her mother, washes dishes, and uses the vacuum cleaner. Plaintiff testified that his daughter "had the total responsibilities of an adult in caring

for her mother. She's had no carefree time where she can grow up and be a little girl." At the time of the hearing on March 12, 1982, Rebecca was nine years old, she turned ten on April 6, and she is now eleven years old and in the fifth grade.

The Chancellor, in commenting on Rebecca, stated

"that she demonstrates a maturity much beyond her years. She is a very alert, very cute, very intelligent, and a very loving child of both parents. This maturity that she demonstrates, no doubt in part, is due to the necessity of her assuming responsibility. That is helping care for her invalid mother, beyond that of an average child of her age and as a result, there has grown between mother and child, an attachment that far exceeds that of an ordinary parent-child relationship. That is clearly evident from every statement and every act of this young child."

Plaintiff avers, and we agree, that the trial court's primary reason for denying Plaintiff's requested visitations appears to be based upon the Defendant's dependency upon her daughter. Under normal circumstances, we have no doubt that out-of-state visitation would have been granted for the Chancellor stated: "this is the first time this court has ever denied a father or a parent visitation like this during the summer. But, as the court has said heretofore, this is the first time this court has ever been faced with the problems attached to this situation." He earlier stated, "This is one of the most depressing and unfortunate situations that this court has ever been called upon to deal with . . ."

■ We acknowledge that this is indeed a most unfortunate situation. However, in reviewing child custody and visitation cases, we must remember that the welfare of the child has always been the paramount consideration.[1]

■ We must stress that this was not a custody hearing but a visitation hearing. We are not asked to terminate a mother's custody of her child, but merely to grant the father visitation privileges with his daughter. We are of the opinion that a ten-day out-of-state visitation between father and daughter would be appropriate. Although this will be an emotional strain on the mother, we believe it will benefit both mother and daughter for them to be apart for this brief visitation. Mrs. Luke should not become totally dependent upon her daughter to care for her on a daily basis for the rest of her life. Such total dependency upon an eleven-year-old child could create future psychological problems for both mother and child as the child matures and exercises her own right to an independent life.

In order for Mr. Luke to have out-of-state visitation with Rebecca for ten days, suitable arrangements for someone to care for Mrs. Luke in her daughter's absence must be made. It will, therefore be necessary to remand this cause to the trial court for a determination of what assistance Mrs. Luke will need and what the costs will be for a ten-day period. Mr. Luke will be responsible for these expenses and payment of the costs shall be a condition precedent to the child's visit with her father out-of-state. Mr. Luke will also be responsible for the transportation of his daughter. From the record, it appears that the Department of Human Services, the Health Department and the Sheriff's Department have rendered some assistance in the past to Mrs. Luke, and would hopefully provide some assistance during the ten-day visitation.

After the ten-day visitation, the trial court will evaluate the effect of the visit on the child and can then determine if future visits with the father outside the state are in the best interest of the child. The Chancellor will have continuing supervisory jurisdiction in respect to the welfare of the child. The costs of this appeal are adjudged

---

1. We think it advisable to note that this would have been an appropriate case to appoint the child a guardian ad litem, for neither counsel for the mother nor counsel for the father could be said to be a disinterested party and representing the best interests and welfare of Rebecca.

against Plaintiff, due to the financial circumstances of the Defendant. Modified and remanded.

FONES, C.J., and COOPER, BROCK and HARBISON, JJ., concur.