# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 9, 2000 Session

## BURGESS STEPHEN RUSSELL v. LINDA SHARION RUSSELL

**Direct Appeal from the Chancery Court for Hamilton County**
**No. 98-1205, Howell N. Peoples, Chancellor**

**FILED OCTOBER 25, 2000**

**No. E1999-02742-COA-R3-CV**

---

This appeal from the Hamilton County Chancery Court concerns whether the Trial Court erred in awarding primary residential responsibility of the minor child to the Appellee, Burgess Stephen Russell. The Appellant, Linda Sharion Russell, appeals the decision of the Chancery Court. We affirm the decision of the Trial Court and remand for further proceedings, if any, consistent with this opinion. We adjudge costs of the appeal against the Appellant, Linda Sharion Russell and her surety.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, Jr., JJ., joined.

Andrew Lawrence Berke, Chattanooga, Tennessee, for the appellant, Linda Sharion Russell.

Christine Mahn Sell, Chattanooga, Tennessee, for the appellee, Burgess Stephen Russell.

## OPINION

This appeal arises from a divorce action between Linda Sharion Russell, the Appellant, and Burgess Stephen Russell, the Appellee. Ms. Russell appeals the judgment of the Hamilton County Chancery Court and presents for our review one issue which we restate: whether the Trial Court erred in awarding primary residential responsibility of the minor child to the Appellee, Burgess Stephen Russell.

We affirm the judgment of the Trial Court and remand for further proceedings, if any, consistent with this opinion.

The parties were married in Hamilton County on May 15, 1988.[1] It was the second marriage for each party. The parties resided in Hamilton County throughout the marriage. Mr. Russell has a daughter from a previous marriage,[2] and Ms. Russell has two daughters from a previous marriage.[3] One child, Brooke Shannon Russell, was born of the marriage between Burgess Stephen Russell and Linda Sharion Russell on December 12, 1990.

The parties separated in May, 1998 when Mr. Russell moved out of the marital residence. Ms. Russell remained in the marital residence with the minor child and one of her daughters from her previous marriage. On November 20, 1998, Mr. Russell filed a Petition for Divorce. On December 16, 1998, the parties were court ordered to mediation to address temporary visitation and a holiday visitation schedule.

On May 18, 1999, Mr. Russell filed a Motion for Injunctive Relief and for Modification of Residential Sharing Schedule as Ms. Russell was planning to move to Kingsport with the minor child. An order was entered on June 29, 1999 following a hearing on June 14, 1999, where the Trial Court enjoined Ms. Russell from moving the parties' minor child, Brooke Shannon Russell, from Hamilton County, Tennessee. The Trial Court also amended Mr. Russell's visitation schedule with the minor child to include overnight visitation.

On August 25, 1999, Mr. Russell filed a "Motion to Amend Amended Complaint" seeking primary custody of the minor child or in the alternative joint custody. Following a trial on August 30, 1999, the Court entered an Order on October 5, 1999 awarding a divorce to Mr. Russell and awarding him primary residence with the minor child. The Court incorporated by reference the parenting plan adopted by the Court on September 1, 1999 as the parenting plan and ordered the parties to comply with its terms.

Ms. Russell's sole issue on appeal is that the Trial Court erred in awarding primary residential responsibility of the minor child to Mr. Russell.

The trial court must be able to exercise broad discretion in determining matters of custody and visitation. *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). Such decisions are factually driven and involve the careful consideration of multiple factors. *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). We review this matter *de novo* upon the

---

[1]According to the Petition for Divorce the parties were married May 15, 1988. Mr. Russell testified at the trial that the parties were married May 15, 1988. However, Ms. Russell testified that the parties were married on May 14, 1988.

[2]At the time of trial, Mr. Russell's daughter was eighteen years old and lived in Summerville, Georgia and was a Freshman in college in Rome, Georgia.

[3]At the time of trial, the oldest daughter was twenty (20) years old and a student in Washington, D.C. and the second daughter was a rising senior in high school and lived in the marital residence with her mother.

record of the proceedings below, with a presumption of correctness "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *see also Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). There is no presumption of correctness with regard to the trial court's conclusion of law, and those conclusions are reviewed *de novo*. *Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

On this appeal, we must determine if the Trial Court abused its discretion in awarding primary residential responsibility of the minor child to Mr. Russell. The abuse of discretion standard was addressed in the case of *BIF, a Div. Of Gen. Signals Controls, Inc., v. Service Constr. Co., Inc.*, an unreported opinion of this Court, filed in Nashville on July 13, 1988:

> Appellate courts' deference to trial courts' "discretionary" decisions should not promote result-oriented opinions or seemingly irreconcilable precedents. The law's need for consistency, predictability, and reliability requires the elimination of apparently whimsical authority on both the trial and appellate levels. In order to ensure a rational standard of review, a trial court's discretionary decisions should be reviewed to determine: (1)whether the factual basis of the decision is supported by sufficient evidence; (2) whether the trial court has correctly identified and properly applied the applicable legal principles; and (3) whether the trial court's decision is within the range of acceptable alternatives.

(Citation Omitted).

In determining the custody of a minor child, the welfare and best interest of the child are the predominant concerns of the court. *In re Parsons*, 914 S.W. 2d 889, 893 (Tenn. Ct. App. 1995).

> Divorce affects children profoundly by undermining their sense of stability and well-being. Thus, custody and visitation arrangements are among the most important decisions confronting a trial court in a divorce case. The needs of the children are paramount; while the desires of the parents are secondary. *Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn. 1986). Custody should never be used to punish or reward the parents, *Turner v. Turner*, 919 S.W.2d 340, 346 (Tenn. Ct. App. 1995); *Long v. Long*, 488 S.W.2d 729, 733 (Tenn. Ct. App. 1972), but rather should promote children's best interests by placing them in an environment that will best serve their physical and emotional needs. *See Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983).

*Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996).

In determining the best interest of a child and in engaging in the comparative fitness test, subtle factors such as parents' demeanor and credibility during the pendency of the divorce trial can be a determining factor for the Trial Court. *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996).

Additionally, the trial court must also consider the factors as set forth in T.C.A. 36-6-411(e)(1):[4]

> The court shall make residential provisions for each child, consistent with the child's developmental level and the family's social and economic circumstances, which encourage each parent to maintain a loving, stable, and nurturing relationship with the child. The child's residential schedule shall be consistent with § 36-6-411. If the limitations of § 36-6-412 are not dispositive of the child's residential schedule, the court shall consider the following factors:
>
> (A) The parent's ability to instruct, inspire, and encourage the child to prepare for a life of service, and to compete successfully in the society which the child faces as an adult;
>
> (B) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting responsibilities relating to the daily needs of the child;
>
> (C) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parent's to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interests of the child;
>
> (D) Willful refusal to attend a court-ordered parent education seminar may be considered by the court as evidence of that parent's lack of good faith in these proceedings;
>
> (E) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (F) The love, affection and emotional ties existing between each parent and the child;
>
> (G) The emotional needs and developmental level of the child;
>
> (H) The character and physical and emotional fitness of each parent as it relates to his or her ability to parent or the welfare of the child;

---

[4] The Chancery Court in the Eleventh Judicial District consisting of Hamilton County, is part of a pilot project enacted by the General Assembly pursuant to T.C.A. 36-6-401(b)(7). The issue on appeal involving child custody is subject to the provisions of T.C.A. 36-6-401, *et seq.*, (Supp. 1999).

(I) The child's interaction and interrelationships with siblings and with significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;

(J) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(K) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and

(L) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(M) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children; and

(N) Each parent's employment schedule, and the court may make accommodations consistent with those schedules.

Ms. Russell argues that the Trial Court neglected the best interest of the child in reaching its decision. More specifically, she relies on the testimony of Susan Parker, a 2nd grade teacher at Bright School and Brooke Shannon Russell's teacher from the previous year, to demonstrate that she is a devoted mother and actively involved in her daughter's life and that Mr. Russell made no effort to participate in these activities. Ms. Parker testified that Ms. Russell attended "all the conferences, open houses, the plays, always," and that the child was an above average student, was likable, enjoyable, and got along well with all her classmates. Ms. Parker further testified that while having not been formally introduced to Mr. Russell, she did recognize him as the father, and assumed she had seen him at Bright School.

Mr. Russell contends that Susan Parker was the minor child's teacher for only one (1) year which was the year the parties were separated and that Ms. Russell was interfering with Mr. Russell's visitation and communication with his minor child during that time period. Mr. Russell also points out that regardless, Susan Parker acknowledged that she recognized Mr. Russell from Bright School.

Ms. Russell also argues that the Trial Court ignored the evidence that Mr. Russell had been violent in front of the minor child. She further contends that Mr. Russell lacked the desire to develop a relationship with his daughter, and that the decision of the Trial Court was merely an attempt to punish Ms. Russell for her actions with regard to the court order enjoining her from removing the minor child from Hamilton County.

Mr. Russell asserts that Ms. Russell has never asked for custody of the minor child in any pleadings, she did not file her parenting plan that proposed Ms. Russell as custodian until the day of trial and that she "refused to comply with the court order and facilitate Husband's relationship with Brooke Shannon."

In the Memorandum Opinion, the Court went through each of the factors set forth in T.C.A. 36-6-411 and stated the following:

> The first factor for the court to consider is A . . . Based on the evidence, the Court will find that both parties have equal abilities in this regard.
>
> The second factor is B . . . In this case both parents have a good relationship with the child. But Ms. Russell has taken greater responsibility, especially since the separation of the parties, by virtue of the fact that she has deprived Mr. Russell of the opportunity to be with the child except as ordered by the court.
>
> The third factor, C, . . . In this case, Ms. Russell has demonstrated that she will not facilitate or encourage a relationship between Mr. Russell and the child, except as ordered by the Court. And even then she has violated the orders of the court.
>
> The next factor, D, . . . In this case Ms. Russell has willfully refused to attend the parent education seminar and offered no reason for this failure.
>
> The next factor, E, . . . Both have shown the ability to provide food, clothing, medical care, and education, and have done so to the extent Ms. Russell has permitted.
>
> The next factor is F, . . . The court finds that the child and both parents have love and affection between themselves and the child.
>
> The next factor is the emotional needs and developmental level of the child. There is no evidence of any special emotional needs or any developmental level concerns.
>
> The next factor is H, . . . In this case, with the exception of Ms. Russell's aversion to the child having a normal relationship with Mr. Russell, both have equal character and emotional fitness.
>
> The next factor is I, . . . Based on the evidence presented, other than the parties to this divorce case and the stepsisters of the child, the child has not been permitted to develop any significant relationship with other relatives. She does have a significant involvement in Bright School and has some friends there. And she has significant involvement in athletic activities here in Chattanooga.

The next factor is J, . . . The child in this case has always lived in Chattanooga and has attended Bright School until the Defendant, Ms. Russell, proposed to move to Kingsport.

The next factor is K, . . . The court finds no evidence of any abuse that would be consideration on parenting responsibilities.

The next factor, L, . . . There is no evidence of any person frequenting the home of Mr. Russell other than Mr. Russell. There is no evidence the child was exposed to anyone by him other than his own mother, Ms. Ora Russell. With regard to persons that would be in the home of Ms. Russell in Kingsport, we have no evidence of who would be there. Her failure to provide notice to move, as is required by statute, has deprived Mr. Russell of any opportunity to offer proof on that matter. The child has testified that Ms. Russell's ex-husband does visit in the home. The Court cannot feel confident of the character of the persons that would be in the home of Ms. Russell.

The next factor is M, . . . The Court did hear the child in this case. She did express a preference. It is the conclusion of the Court that Ms. Russell had exercised influence on the child.

The next factor, N, each parent's employment schedule, and the Court may make accommodations consistent with those schedules.

As for Ms. Russell's contention that the Trial Court neglected the best interest of the minor child and her reliance on the testimony of Susan Parker, we disagree. While the record supports the fact that Ms. Russell was actively involved in the minor child's academic and recreational achievements, that is but one of the many factors set forth in T.C.A. 36-6-411. Additionally, the record does not support an argument that Mr. Russell lacked interest or involvement in the minor child's academic or recreational achievements. Furthermore, the Trial Court found that both parents had equal abilities in this regard.

Ms. Russell further argues that the Trial Court ignored evidence that Mr. Russell had been violent in the home. We again disagree. The Trial Court heard testimony from Mr. Russell, Ms. Russell, and Ms. Russell's oldest daughter, Lindsay Edwards, concerning the alleged violence in the home. The Trial Court is in a better position to determine the credibility of witnesses who testify during a hearing, thus, we must give credence to the Trial Judge's findings regarding witness credibility. *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996). Following the testimony of the witnesses, the Trial Court found "no evidence of any abuse that would be consideration on parenting responsibilities."

Finally, Ms. Russell argues that Mr. Russell lacked a desire to develop a relationship with the minor child and that the decision of the Trial Court was merely an attempt to punish Ms. Russell for her actions with regard to the court order enjoining her from moving the minor child to Kingsport. We find both arguments to be without merit.

We are of the opinion that the evidence does not preponderate against the Trial Court's decision to award primary residential responsibility of the minor child to the Appellee, Burgess Stephen Russell. The Trial Court correctly applied the factors of T.C.A. 36-6-411. Additionally, the Trial Court very meticulously applied every factor set forth in the statute to the case at hand in making their determination. We find no abuse of discretion by the Trial Court.

In light of the foregoing, we affirm the judgment of the Trial Court and remand for further proceedings, if any, consistent with this opinion. We adjudge costs of appeal against the Appellant, Linda Sharion Russell and her surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE