# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 25, 2012

## DOUGLAS STOGNER v. ROSEANN STOGNER (SULLIVAN)

### Appeal from the Circuit Court for Davidson County
### No. 99D1662    Philip E. Smith, Judge

---

### No. M2011-00503-COA-R3-CV - Filed May 31, 2012

---

In this post-divorce proceeding, Mother appeals the trial court's order enjoining the parties from allowing their child to be in the presence of a friend of Mother's. Father appeals the trial court's calculation of the number of days he exercises parenting time for purposes of determining his child support. Finding that the court erred in its calculation of the number of days of Father's parenting time, we vacate the award of child support and remand for a redetermination. We affirm the trial court's issuance of the injunction.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Vacated in Part; Case Remanded

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and FRANK G. CLEMENT, JR., J., joined.

George E. Copple, Jr., Nashville, Tennessee, for the Appellant, Roseann Stogner (Sullivan).

Sandra Jones, Nashville, Tennessee, for the Appellee, Douglas Jay Stogner.

### OPINION

## I. Factual and Procedural History

Roseann Stogner (Sullivan) ("Mother") and Douglas Stogner ("Father") were divorced on August 25, 2000. The Final Decree of divorce awarded the parties joint custody of their son and designated Mother as the primary residential parent from September through May and named Father the primary residential parent from June through August.

The Order giving rise to this appeal derives from Mother's Petition to Modify Child Support and Determine Arrears filed May 29, 2009, in which she alleged, *inter alia*, that

changes in her employment and changes in the Child Support Guidelines warranted a modification of child support. Father answered and filed a Counter-Petition for Criminal Contempt, Modification of Support, and Entry of a Parenting Plan. Thereafter, Mother filed an amended petition seeking modification of the parties' parenting plan and an order holding Father in criminal contempt. Prior to the hearing, both parties non-suited their respective contempt allegations.

The court held a trial on July 6–7 and August 24 and entered an Order Modifying Parenting Schedule on November 16, 2010, holding that a material change in circumstances had occurred, making a modification of parenting time in the child's best interest. The court set forth a revised parenting schedule and recalculated Father's child support responsibility. The trial court further enjoined Mother from allowing the child to be in the presence of Father's neighbor, Stacey Jongema. The trial court entered a permanent parenting plan on January 11, 2011 naming Mother the primary residential parent. Based on the parenting schedule, the court calculated Mother and Father's parenting time at 258 and 107 days respectively.

Mother filed a motion to alter or amend requesting the court to delete the injunction against Mother. Father filed a motion to alter or amend requesting the court to recalculate the number of days of his parenting time for purposes of setting child support. The trial court denied both motions, and both parties appeal

## II. Standard of Review

We review a trial court's findings of fact *de novo* with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Appellate review of a trial court's visitation determination is conducted under the deferential abuse of discretion standard. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). "'[T]he details of custody and visitation with children are peculiarly within the broad discretion of the trial judge.'" *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1998) (quoting E*dwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn.Ct.App.1973)). Thus, a trial court's decision on these issues will be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

### III. Analysis

#### A. Injunction

In its November 16, 2010 Order, the trial court ordered that "[Mother] is ENJOINED and RESTRAINED from allowing the parties' minor child to be in the presence of Stacey Jongema."[1]  Mother contends that the "lack of a pleading raising any issue about Stacey Jongema in this case deprived the Court of subject matter jurisdiction to enter an injunction," and that, in any event, there was insufficient proof to support the issuance of the injunction. Father asserts that the trial court appropriately exercised its discretion in protecting the child's emotional well-being.

Pursuant to Tenn. Code Ann. § 36-6-101, *et seq.* a court has the duty to make custody determinations based on the best interest of the child and, in the exercise of its duty, to consider all relevant factors.  Likewise, courts must make post-divorce and parenting plan decisions that promote the development of the child's relationship with both parents and interfere as little as possible with family decision-making. *See Adelsperger v. Adelsperger*, 970 S.W.2d 482, 484 (Tenn. Ct. App. 1997) (citing *Aaby v. Strange*, 924 S.W.2d 623, 629 (Tenn. 1996); (*Taylor v. Taylor*, 849 S.W.2d 319, 331–32 (Tenn. 1993)).  The interests of the parents are secondary to those of the children, and the court's ultimate goal is to promote the child's best interests by placing them in an environment that best serves their physical and emotional needs.  *See Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn. 1986); *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983).

In addressing this issue, we are somewhat constrained by the fact that the appellate record contains only a partial transcript of the three-day hearing, specifically, the testimony of Ms. Jongema and a sampling of the cross-examination of Mother.  We understand that Mother has articulated a narrow issue on appeal, nevertheless, without the ability to review the entire record, and in accordance with Tenn. R. App. P. 13(d), we presume the correctness of the trial court's factual findings.  "Where factual issues are raised, including issues of sufficiency of the evidence, without a transcript or complete statement of the evidence, we must conclusively presume that there was sufficient evidence to support the trial court's findings." *Vineyard v. Betty*, M2001-00642-COA-R3CV, 2002 WL 772870, at *3 (Tenn. Ct. App. Apr. 30, 2002) (citing *Coakley v. Daniel,* 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992)).

Accordingly, we presume there was sufficient evidence to support the following finding, which gives context to the issuance of the injunction:

---

[1]  The Parenting Plan entered on January 11, 2011 included Father in the scope of the injunction.

The Court finds after hearing the testimony and viewing the demeanor of [Mother], [she] appears to be very vengeful and will stop at nothing to interfere with [Father's] relationship with [the child]. [Mother] is very controlling and she has a completely different parenting style than [Father]. The Court finds that [Mother] has a difficult time accepting and following the orders of this Court. . . . The Court further finds that [Mother] appears to be over protective and that she monitors closely what goes on between the minor child and [Father].

In support of the injunction, the court made the following findings of fact:

Additionally, [Mother] has gone so far as to befriend a neighbor of Mr. Stogner's by the name of Stacey Jongema. Although neighbors, the relationship between Mr. Stogner and Ms. Jongema is volatile and very antagonistic. The Court finds, based on Ms. Jongema's own testimony, that she has forwarded derogatory information to Mr. Stogner's former attorney and even to Mr. Stogner's mother in an effort to cause damage to his character. The Court further finds that Ms. Jongema even apparently assaulted the current Ms. Stogner. Ms. Jongema clearly has a [sic] "axe to grind" with Mr. Stogner and the Court finds her testimony to be of no probative value. However, based on the testimony of Ms. Jongema and her actions towards Mr. Stogner and his family, the Court finds that Ms. Jongema has joined in [Mother's] vendetta towards Mr. Stogner. The Court finds that Ms. Jongema's actions are so vile that it would be inappropriate to allow the minor child, Taylor to have contact with her. The Court finds that the minor child's continued exposure to Ms. Jongema constitutes a substantial threat of harm to the emotional well-being of the child, as well as the parent and child relationship between said child and Mr. Stogner. Therefore, the Court finds that under no circumstances is this child to be around Ms. Jongema.

The trial court made appropriate findings to support the issuance of the injunction and the findings are supported by the record. During cross examination, Ms. Jongema was asked about her relationship with Father's current wife and testified as follows:

Q: You, I believe, you and [Father's] now wife were big buddies for a while, weren't you?
A: We were friends. Big buddies, no, but we were friends.
. . .

Q: . . . Isn't it true that when you all got crossed up for whatever reason, you were really crossed up and you and Ms. Stogner got into it and she had to take out an assault warrant against you?
A: Okay. Maybe she's right. I don't know if she - -

Ms. Jongema was asked about the package of information she sent to Father's mother and testified as follows:

Q: Ms. Jongema, His Honor ruled that you may explain why you sent this package, as I understand it, to Dr. Stogner's mother who lives in, what, Illinois?
A: Yes, she does.
Q: Okay. Why did you send it?
A: Well, honestly, I mean, there is [sic] some things in there that maybe I shouldn't have as far as the arrest record on [Father's former girlfriend] . . .

The court properly considered Mother's relationship with Ms. Jongema in its consideration of the issues presented by the parties. Among the factors to be taken into account by the court in making a determination as to the best interest of the child are those set forth at Tenn. Code Ann. § 36-6-106(a)(9) and (10).[2] The determination of the best interest of the child is an independent responsibility of the court and is not limited by the issues specifically raised by the pleadings. The trial court heard the testimony of Mother and

---

[2] Tenn. Code Ann. § 36-6-106(a) provides in pertinent part:

(a) In . . . any . . . proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest . . . The court shall consider all relevant factors, including the following, where applicable:
* * *
(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and
(10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Ms. Jongema and exercised its authority to enjoin both parties from having the child around Ms. Jongema. We find no abuse of discretion and affirm the issuance of the injunction.[3]

### B. Calculation of Number of Days of Parenting Time

Father cross-appeals and asserts that the trial court erred in calculating the number of days he exercises parenting time for purposes of setting his child support. Specifically, Father contends he exercises 132 days of parenting time with the child rather than 107 as found by the trial court.

Under the permanent parenting plan adopted by the court on January 18, 2011, Father has the child every other weekend from 6:00 p.m. on Friday until 8:00 a.m. on Monday, and every other Wednesday evening at approximately 4:00 p.m. until Thursday morning at 8:00 a.m. When school is not in session, Father exercises parenting time every Wednesday night until Thursday morning. He also gets the child during Fall and Spring Break, Father's Day, and for the first calendar weeks of June, July, and August. The plan requires the child to alternate various holidays between the parents.

The Child Support Guidelines promulgated by the Department of Human Services define "days" for the purpose of calculating child support as follows:

> "Days" -- For purposes of this chapter, a "day" of parenting time occurs when the child spends more than twelve (12) consecutive hours in a twenty-four (24) hour period under the care, control or direct supervision of one parent or caretaker. The twenty-four (24) hour period need not be the same as a twenty-four (24) hour calendar day. Accordingly, a "day" of parenting time may encompass either an overnight period or a daytime period, or a combination thereof.

Tenn. Comp. R. & Regs. 1240-2-4-.02(10).

---

[3] After oral argument, Mother provided the Court with supplemental authority, *Troxel v. Granville*, 530 U.S. 57 (2000), to bolster her argument that the trial court erred in issuing the injunction regarding Ms. Jongema. *Troxel* involved the application of the Washington nonparental visitation statute, which the Supreme Court held was "breathtakingly broad" and unconstitutionally infringed on the fundamental right of the parents "as applied to [the respondent] in [that case]." *Id.* at 67. *Troxel* is distinguishable and does not necessitate a different outcome here. We are not confronted with a similar statute, rather we are reviewing a finding by a lower court that any type of visitation with Ms. Jongema would constitute "a substantial threat of harm to the emotional well-being of the child" and would also bring harm to the parent-child relationship between the child and his Father. We have concluded that the evidence supports this finding, and that the finding supports the issuance of the injunction.

The record does not provide any information regarding the method the court used to calculate Father's parenting time. However, it appears that the trial court gave Father credit for two days of parenting time during his weekend visitation with the child. Father contends he should have been credited with three days of parenting time for the time period he spent with the child on the weekends. We agree with Father.

This Court confronted a similar scenario in *Eaves v. Eaves* and was required to interpret and apply the regulation at Tenn. Comp. R. & Regs. 1240-2-4-.02(10). *Eaves v. Eaves*, No. 2006-02185-COA-R3-CV, 2007 WL 4224715, at *6–8 (Tenn. Ct. App. Nov. 30, 2007). In *Eaves*, this Court held that a stretch of time starting Friday at 3:30 p.m. and ending on Monday morning counts as three days, because the time period includes "three 24-hour periods during which the children spend more than half of the period with Husband." *Id.* at *7. The same is true with respect to the facts presented here. From 6:00 p.m. Friday until 6:00 p.m. Sunday, Father spends 48 hours with the child. From 6:00 p.m. Sunday until Monday at 8:00 a.m., Father spends an additional 14 hours with the child. Thus, the child spends "more than twelve (12) consecutive hours in a twenty-four (24) hour period under the care, control or direct supervision" of Father. Therefore, Father should be credited with three days for the time he spends with the child on his weekend visitation.[4]

Our application of Tenn. Comp. R. & Regs. 1240-2-4-.02(10) and our review of the record establishes that Father should be credited with 130 days of parenting time for the purpose of setting his child support obligation.[5] Because the trial court erroneously used 107 days as the number of days of Father's parenting time, we must vacate the award of child support and remand for a redetermination of the appropriate amount of child support under the Guidelines based on Father's 130 days of parenting time.

---

[4] As this Court discussed in *Eaves*, "this method of counting partial days could create analytical difficulties in some situations because it can result in double-counting." *Eaves*, 2007 WL 4224715, at *8 (citing *Helton v. Helton*, No. M2002-02792-COA-R3-CV, 2004 WL 63478, *8 (Tenn. Ct. App. Jan. 13, 2004)). We do not preoccupy ourselves with this mathematical oddity. Instead, we apply Tenn. Comp. R. & Regs. Tenn. Comp. R. & Regs. 1240-2-4-.02(10) to determine the number of days Father exercises parenting time with the child.

[5] We arrive at this number by crediting three days of parenting time for his visitation with the child every-other weekend, one day for the hours spent with his child every other Wednesday evening/Thursday morning, ten days for Fall and Spring break, fifteen days for his three weeks of summer visitation, and one day for Father's Day.

## IV. Conclusion

For the foregoing reasons, we affirm the issuance of the injunction relative to Ms. Jongema. We vacate the award of child support and remand the case for a redetermination in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE