# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 12, 2011 Session

# LUKE NASGOVITZ v. GAIL ANN NASGOVITZ

**Appeal from the Chancery Court for Rutherford County**
**No. 091456D      Royce Taylor, Judge**

**No. M2010-02606-COA-R3-CV - Filed June 27, 2012**

The father of an eight year old girl filed a petition for divorce from the child's mother. After the petition was filed, the court entered a standard restraining order, which among other things prohibited either party from relocating with a minor child outside the state without the permission of the other party or an order of the court. The wife asked the court to name her as the child's primary residential parent and to allow her to relocate with the child to St. Louis, because that city offered her better employment prospects than did Middle Tennessee. The father opposed the mother's request to relocate, and he asked the court to divide parenting time equally. After a three day trial, the court ruled that the mother's proposed relocation was unreasonable and pretextual and that it was in the child's best interest that the mother be named the primary residential parent, with the mother and child remaining in Tennessee. The mother argues on appeal that the trial court should have allowed her to relocate with the child because the criteria set out in the relocation statute, Tenn. Code Ann. § 36-6-108, did not preclude her from doing so. We affirm the trial court's denial of the petition to relocate with the child.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Jeffery B. Cox, Murfreesboro, Tennessee, for the appellant, Gail Ann Nasgovitz.

John D. Drake, Murfreesboro, Tennessee, for the appellee, Luke Nasgovitz.

## OPINION

## I. BACKGROUND

Luke Nasgovitz ("Father") and Gail Nasgovitz ("Mother") married in Rutherford County, Tennessee on May 20, 2000, and they resided there during the course of their entire marriage. Both parties were originally from Wisconsin, and neither has any relatives in Middle Tennessee. Their only child, a daughter named Emily, was born on April 15, 2002. The proof showed that both parties were fit and loving parents, but that the relationship between them became increasingly unstable over time.

On October 9, 2009, Father filed a complaint for divorce in the Rutherford County Chancery Court citing irreconcilable differences and inappropriate marital conduct as grounds. He asked the court to appoint a special master to determine the possession of the marital residence, a temporary residential parenting plan, and child support.

On the same day that the complaint was filed, the court filed an order appointing a special master and a restraining order pursuant to Tenn. Code Ann. § 36-4-106. Among other things, the restraining order states that "[b]oth parties are restrained from relocating any children of the parties outside the state of Tennessee, or more than one hundred (100) miles from the marital home, without the permission of the other party or an order of the court."

Both parties submitted motions and proposed temporary parenting plans to the Special Master. Mother proposed that she be designated as Emily's primary residential parent. She also requested that she and the child be allowed to move out of the marital home and that the court order Father to provide her with financial support to enable her to move, as well as child support and financial assistance to buy a car, since she had recently been involved in an accident that resulted in her vehicle being totaled. Father requested that he be designated as the child's primary residential parent.

The hearing before the master was conducted on February 8, 2010, after which he entered a report that included both findings of fact and conclusions of law. The master found that both parties were loving and caring parents who were capable of taking good care of the child. Because Mother has been the primary caregiver, the master named her as the primary residential parent *pendente lite*. Father was granted parenting time every other week from Thursday to Monday morning and one night each week until 8:00 p.m.

The master found it was appropriate for Mother to move from the marital home to an apartment, and he ordered Father to pay child support in accordance with the child support guidelines and spousal support, and also to make all mortgage payments on the marital home

and help Mother find and pay for a replacement vehicle. Neither party filed an objection to the Master's report within ten days of receiving it, and it was subsequently adopted as an order of the court. *See* Tenn. R. Civ. P. 53.

On April 30, 2010, almost ten months after the divorce complaint was filed, Mother filed an answer to Father's complaint and a counter-complaint for divorce. She denied that she had been guilty of inappropriate marital conduct, but alleged that Father had "offered such indignities to her person as to render [her] position intolerable." She agreed that there were irreconcilable differences between the parties, and she asked the court to grant her an absolute divorce, or to declare both parties to be divorced on stipulated grounds pursuant to Tenn. Code Ann. § 36-4-129(b).

Mother also stated that her education and the majority of her work experience lie in the field of interior architecture; that she has been actively seeking employment in the field; and that since the filing of the divorce complaint she obtained several job leads in the St. Louis, Missouri area. She accordingly asked the court to give her permission to move to St. Louis and alleged that such a move was in her daughter's best interest. Father responded to the counter-complaint, asserting that it was in the child's best interest to have a close and loving relationship with both parents equally, and that it would not be in the child's best interest for Mother to relocate to St. Louis.

## II. THE FINAL DIVORCE HEARING

The final divorce hearing began on June 9, 2010. Mother testified that the marriage had been "slowly unraveling, slowly dissolving." In the summer of 2009, she concluded that the marriage was over, moved into a separate bedroom in the marital home, and began searching the internet for other people to connect with.[1]

Father was always the primary breadwinner for the family. He had been employed at Nissan for almost nine years, working 40 to 50 hours per week. His earnings in 2009 were close to $60,000. Mother also worked during the marriage, but she was unhappy with the direction her career had taken. Mother testified that she earned a bachelor's degree in the field of architectural design and that she worked for an interior design firm in Brentwood from 1998 to 2003, but stopped working there after Emily was born. She later started her own home business, but she found it impossible to properly focus on it while taking care of a toddler. At the time of the proceedings herein, she was working part time behind the deli counter at a Publix Supermarket and earning about $10 per hour.

---

[1]Mother testified that after she told Father that she wanted to separate from him, he asked to go to counseling with her, but she refused.

Mother testified that she had looked into the possibility of finding another job in her chosen field in Middle Tennessee, but without success. She then explored the job market in St. Louis, which she believed offered her greater opportunities. During her testimony on the first day of trial, she stated that she had already gone to several job interviews in St. Louis and that another one was scheduled, but that she had no concrete offers as yet. She also testified that she had found a good friend through the internet, a woman who lives in Missouri named Angela Jones, who is also involved in design and architecture. During Mother's trips to St. Louis to explore the possibility of moving to that city she met with Ms. Jones a few times.[2] Mother acknowledged that on one of those occasions she and Ms. Jones shared an intimate sexual encounter.

Several witnesses testified as to Father's relationship with his daughter and his qualities as a parent, including the wife of the pastor of the church the Nasgovitz family attended, the family's next door neighbor, and the wife of Father's brother. All testified that Father was a very good parent, very nurturing, patient and attentive to the child, and that Emily was a happy and well-mannered child and a good student. They acknowledged on cross-examination that Mother was a good parent as well, and that they had never witnessed any inappropriate conduct by her.

Father testified that he had always exercised all the parenting time with Emily that the court allowed and that he would like more. He was asked what the effect would be on him if Mother were to move to Missouri with their child. He testified that it would be very difficult for him to visit with Emily, and that he would probably try to look into job opportunities in the St. Louis area so he could spend more time with her.[3] But he stated that he didn't like the idea of doing that because his current job is a good one. He had earlier testified that he was earning far more working for Nissan than he believed he could earn anywhere else, given his background and experience.

---

[2]Ms. Nasgovitz testified that Ms. Jones is a good friend and that she talks with her on an almost daily basis. Asked what her friend's address was, she testified that Ms. Jones didn't tell her because she did not want to get involved in the divorce, and, "I know she's in the St. Louis area, and that's all I know." Other testimony in the record indicated that Ms. Jones lives in Kansas City.

[3]Mother's reaction to the possibility of Father moving to St. Louis was a negative one. She was asked at deposition if she thought that he should get more parenting time with Emily if he moved to be closer to her, and she stated that would not be appropriate. Confronted by that testimony on the first hearing day, she backpedaled a bit, saying that was just an initial response, not a thought-out answer. On the second hearing day, she was questioned again about a possible move by Father to St. Louis. She acknowledged that "I can't keep him from his child," but insisted that "I don't have to have a relationship with him just because we have a child together."

At the conclusion of testimony on the first day of trial, the trial court modified the temporary parenting plan. Noting that school was out for the summer, the court ordered the parties to alternate residential parenting each week, giving them equal residential time.

When trial resumed on July 27, 2010, Mother testified that just the previous week she had been offered a full-time job with an architectural firm in a St. Louis suburb paying between $30,000 and $40,000 a year plus benefits. She also testified about research she had done on the internet about living conditions in the area where the firm was located, including housing, possible schools for Emily, local parks, and available recreational activities. Printouts from her research were entered into the record.[4] Mother did not submit a letter from the firm or any other evidence to document the existence and nature of the job offer.

The trial court announced its decision in open court on July 30, 2010. The court declared that it was granting the divorce to Father on the ground of inappropriate marital conduct. It then concluded, on the basis of Father's work schedule and Mother's primary role in raising the child, that Mother should be designated as the primary residential parent. The court stated that both parents have an excellent bond with the child and that the child needs both parents, but, "that's not going to happen if the child goes to Missouri." The court then discussed Mother's proposed move in light of the criteria set out in the relocation statute, Tenn. Code Ann. § 36-6-108, and concluded that the move was unreasonable, and that it might have been pretextual because it arose out of Mother's extra-marital relationship with Ms. Jones, and that in any case it was not in the best interest of the child.

The court's decision was memorialized in a final decree of divorce entered October 29, 2010. The order dealt with all aspects of the divorce, but this appeal challenges only the trial court's decision on Mother's request to relocate with Emily to St. Louis.

### III. PARENTAL RELOCATION

Our courts have long struggled with the question of the circumstances under which a custodial parent should be permitted to relocate to a distant location with a minor child when such a relocation would have a substantial impact on the child's relationship with the other parent. *See Aaby v . Strange,* 924 S.W.2d 626 (Tenn. 1996); *Taylor v. Taylor*, 849 S.W.2d 319 (Tenn. 1993); *Seessel v. Seessel,* 748 S.W.2d 422 (Tenn. 1988). In 1998, the legislature enacted a statute to guide courts in making such a determination. The trial court

---

[4]Father's attorney objected to the admission of the printouts on the basis of hearsay. The trial court acknowledged that Mother wanted to submit them for the truth of the matters contained in them and that there was no way to verify their accuracy, but it ruled that they could be admitted for the purpose of proving the efforts Mother had made to investigate the area.

herein applied that statute and adopted its analytical framework.

## A. The Relocation Statute

Tennessee Code Annotated § 36-6-108 sets out a procedure that the parent who intends to relocate must follow, in order to give the other parent ample notice of his or her intention as well as the opportunity to object. That statute also establishes the standards for a court to follow in ruling on a request to relocate with a minor child. The standards are to be applied depending upon which of two alternate situations exist.

Tennessee Code Annotated § 36-6-108(c) applies if the parents are "actually spending substantially equal intervals of time with the child." In that situation, "no presumption in favor of or against the request to relocate with the child shall arise." Rather, the court must determine whether to permit relocation on the basis of the best interests of the child, which are to be determined in accordance with the factors set out in Tenn. Code Ann. § 36-6-108(c)(1-11).

On the other hand, Tenn. Code Ann. § 36-6-108(d) applies if "the parents are not spending substantially equal intervals of time with the child, and the parent spending the greater amount of time with the child proposes to relocate with the child." In that situation, the relocation "shall" be permitted unless the court finds one or more of the following factors to exist:

(A) The relocation does not have a reasonable purpose;
(B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or
(C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

If one of the above factors does exist, then the court "shall determine whether or not to permit relocation of the child based on the best interest of the child."[5] Tenn. Code Ann. § 36-6-108(e).

The trial court acknowledged that the circumstances of the present case did not

---

[5]If the court finds that it is not in the best interest of the child to relocate, but the parent with whom the child lives the majority of the time decides to relocate anyway, then the court is authorized to make a new custody determination. Tenn. Code Ann. § 36-6-108(e).

present a clear-cut example of either scenario. The court noted that both parents had been living together until after the divorce complaint was filed, and that such a living arrangement can be considered an equal division of parenting time. The trial court's February 2010 adoption of the special master's *pendente lite* report resulted in Mother moving out of the marital home and spending a greater amount of time with the child than Father after that date. But the court's modification of the order after the first day of trial in June of 2010 restored the equal division of parenting time.

The trial court suggested that it could have applied the standards of either Tenn. Code Ann. § 36-6-108(c) or (d) to Mother's relocation request. It made its decision, however, by applying the standard set out in (d), which credited Mother with spending more time with the child. However, the trial court found that the proposed relocation was unreasonable and pretextual, thereby triggering consideration of the child's best interests. If the trial court had applied subsection (c) instead, it still would have been required to determine the question of relocation on the basis of the child's best interests.

In this appeal, Mother does not challenge the trial court's finding that moving to St. Louis would not be in the child's best interests. Instead, she challenges the trial court's findings regarding her proposed move to St. Louis and her reasons for that relocation. Her argument is based upon the relocation statute, Tenn. Code Ann. § 36-6-108, and application of the standards in subsection (d).

**B. Applicability of Statute**

In a series of cases beginning with *Gregory v. Gregory*, W2002-01049-COA-R3-CV, 2003 WL 21729431 (Tenn. Ct. App. July 14, 2003) (no Tenn. R. App. P. 11 app. filed), this court has held that the standards in the Relocation Statute should not be applied when the court is making the initial custody decision or parenting arrangement.

> In *Gregory* we noted that Tenn. Code Ann. § 36-6-108(d) [the Relocation Statute] had previously only been applied to modification of custody situations. *Id*. at *6. In *Gregory*, this Court held that, in making an initial custody decision, the trial court must "consider what is in the child's best interests," and that determination "depends on the facts and circumstances of the case." *Id*. at *10. We further held that the trial court in *Gregory* was correct in applying the best interest of the child approach as provided in Tenn. Code Ann. § 36-6-106. *Id*. at *15.

*Rudd v. Rudd*, No. W2009-00251-COA-R3-CV, 2009 WL 4642582, at *6 (Tenn. Ct. App. Dec. 9, 2009) (affirming trial court's use of general custody and visitation statute instead of

Relocation Statute in ordering initial permanent parenting plan). *See also Morris v. Morris*, No. W2010-00293-COA-R3-CV, 2011 WL 398044, at *9 (Tenn. Ct. App. Feb. 8, 2011) (following *Gregory* and *Rudd*, affirming trial court's refusal to apply relocation statute when move took place during pendency of divorce action where *pendente lite* custody order was in place).

In *Gregory* the mother accepted a job promotion and moved to Texas during the pendency of divorce proceedings in Shelby County, Tennessee. She requested approval to relocate with the minor child. This court defined the issue in the case as "the proper standard to be applied when making an initial custody determination where one parent plans on relocating out of state with the minor child." *Gregory*, 2003 WL 21729431, at *2. The mother argued that the trial court erred in applying the best interest standard in Tenn. Code Ann. § 36-6-106[6] and should have applied the standard set out in the Relocation Statute.

This court held, however, that the trial court had applied the correct standard and the correct statute. *Id*. at *5. We also noted that the case involved an initial custody determination where the trial court "has not previously engaged in a best interest analysis and neither parent previously had been adjudicated the custodial or primary residential parent." *Id*. at *3.

In *Annear v. Clouse*, No. E2006-02120-COA-R3CV, 2007 WL 2984693 (Tenn. Ct. App. Oct. 15, 2007), after the filing of the complaint for divorce, a temporary parenting plan was entered making the father the primary residential parent. Six months later, the father filed a request to relocate with the child to another city in Tennessee. On appeal, the father argued that the trial court should have granted his request to relocate with the child by applying the Relocation Statute. This court held that the trial court had correctly applied the best interest analysis in the parenting plan statute, Tenn. Code Ann. § 36-6-404(b) (setting forth factors to be considered in devising a permanent parenting plan), stating, "[f]ollowing the reasoning of *Gregory*, the husband's assertion that the trial court should have determined the designation of the primary residential parent under the relocation statute, . . . and not under the child custody statute, . . . must fail. *Id*. at *4.

The court in *Annear* recognized that the Relocation Statute does not explicitly require

_____

[6]Prior to 1997, the statutes governing the custody of minor children in divorce cases were found at Tenn. Code Ann. § 36-6-101 *et seq*. In 1997, our legislature enacted Tenn. Code Ann. § 36-6-401 *et seq*, directing the courts to establish permanent parenting plans for divorcing couples with minor children. The Parenting Plan statutes include a set of factors to be considered in establishing the parenting plan. Tenn. Code Ann. § 36-6-404(b). The sets of factors are not substantively different and both are designed to reach a decision based upon the child's best interests.

that parents be divorced or that a prior permanent parenting plan be in place before that statute can be applied. However, the court could find no case where that statute had been applied in an initial determination of a permanent parenting arrangement. *Id*.

We agree with the conclusion reached in those earlier cases. The Relocation Statute does not specifically state whether or not it applies in cases involving an initial custody determination, but it is clearly geared towards situations where such a determination has already been made. Tennessee Code Annotated § 36-6-108(d)(1) prohibits a parent from relocating absent court authorization "pursuant to a **change** of custody or primary custodial responsibility." Another subsection states that "[u]nless the parents can agree on a **new** visitation schedule, the relocating parent shall file a petition seeking to **alter** visitation." Tenn. Code Ann. § 36-6-108(b). Both provisions refer to an existing order of parenting or custody and visitation in place at the time the relocation is requested.[7]

Finally, Tenn. Code Ann §36-4-106(d) establishes temporary injunctions that become effective upon the service of a complaint for divorce. Subsection (6) thereof requires that those injunctions be attached to the summons and complaint. Relevant here is §36-4-106(d)(5), which provides in pertinent part:

> An injunction restraining both parties from relocating any children of the parties outside the state of Tennessee, or more than one hundred (100) miles from the marital home, without the permission of the other party or an order of the court, except in the case of a removal based upon a well-founded fear of physical abuse against either the fleeing parent or the child.

This statute governs any requests to relocate with a minor child during the pendency of a divorce proceeding until a final or permanent parenting plan is ordered. Consequently, the Relocation Statute does not apply during that time.[8]

---

[7]We do not consider a temporary or *pendente lite* parenting arrangement to be an existing order of parenting or custody and visitation in this context. See *Morris*, 2011 WL 398044, at *9 (stating the *pendente lite* order designating primary residential parent "was, of course, not a final order, and the matter remained in the bosom of the court" and considering the final order in the divorce an initial custody determination).

[8]But even if we were to hold that the relocation statute, Tenn. Code Ann. § 36-6-108, did apply in this case, our analysis would remain the same. The evidence does not preponderate against the trial court's findings that Mother's proposed move was unreasonable. Additionally, the proof shows that both parents had spent substantially equal intervals of time with the child, except for a period of a few months after the special master named Mother as the primary residential parent *pendente lite*, and before the trial court restored equal parenting time. Under those circumstances, pursuant to Tenn. Code Ann. § 36-6-108(c), the

(continued...)

[8](...continued)
decision would have been made on the basis of the child's best interest, without any presumption in favor of or against Mother's request to relocate.

-10-

### C. The Child's Best Interest

The appropriate approach to the issue of Mother's request to relocate with the child, made while the divorce action was pending, was to consider the child's best interests in accordance with Tenn. Code Ann. § 36-6-401. The trial court found, under the Relocation Statute, that Mother's request was not reasonable and, therefore, that the relocation request was to be determined by the child's best interest. Tenn. Code Ann. § 36-6-108(e). Thus, the trial court made its decision by applying the same standard, best interests of the child, even if the same exact statutory factors do not specifically apply. When establishing a permanent parenting plan, the trial court is directed to consider all the relevant factors, including those set out in Tenn. Code Ann. 36-6-404(b).

Father has not asked us to reverse the trial court's designation of Mother as the primary residential parent, as long as Mother does not relocate. Nor has Mother challenged the trial court's determination that it was not in Emily's best interests to relocate to St. Louis with her mother.

Nonetheless, we have reviewed the evidence herein in light of the relevant factors, and we cannot conclude that the trial court's determination of best interests is in error. A trial court's determination of a post-divorce parenting plan for a minor child must be made upon the basis of the best interest of the child. Tenn. Code Ann. § 36-6-401. Such determinations are not intended to either reward or to punish parents, *Earls v. Earls*, 42 S.W.3d 877, 885 (Tenn. Ct. App. 2000), but rather to place the child in an environment that will that will best serve its physical and emotional needs. *Luke v. Luke,* 651 S.W.2d 219, 221 (Tenn. 1983); *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996).

The evidence shows that Emily has thrived in her current environment, and that she is an intelligent and happy child and a good student. Taken as a whole, the proof shows that both parties are capable and loving parents, and that it is in the best interest of their child to have frequent contact with both of them, and it is in her interest to remain in the school she has been attending. The evidence therefore does not preponderate against the trial court's designation of Mother as the child's primary residential parent, with the proviso that she not relocate with the child. We accordingly affirm the trial court's decision.

## IV. CONCLUSION

The judgment of the trial court is affirmed. We remand this case to the Chancery Court of Rutherford County for any further proceedings necessary. Tax the costs on appeal to the appellant, Gail A. Nasgovitz.


_____
PATRICIA J. COTTRELL, JUDGE